SALEM COMMUNITY SCHOOL CORP. ET AL. *v.* PHIL EASTERLY.

[No. 571A91. Filed November 17, 1971. Rehearing denied December 14, 1971. Transfer denied April 5, 1972.]

*Howard J. DeTrude, Jr., Kightlinger, Young, Gray & Hudson,* of Indianapolis, *Wayne A. Shirey, Myers, Slagle & Shirey,* of Muncie, for appellants.

*Darrel K. Peckinpaugh, Warner, Clark & Warner,* of Muncie, for appellee.

SHARP, J.—This case involves the question of whether public school authorities in the State of Indiana have the power to expel from such public schools a student under the

age of sixteen years. The Trial Court held that the Indiana Compulsory School Attendance Act which is Acts 1921, Chapter 132, as amended, which is found in Ind. Stat. Ann. § 28-5310 (Burns 1970), I.C. 1971, 20-12-25-1 precluded the public school authorities from expelling a child under the age of sixteen years. The Trial Court held that only a court exercising juvenile court jurisdiction could cause such a student under the age of sixteen years to be expelled. On the basis of the foregoing, the Trial Court granted an injunction in favor of the Appellee-Student against the Appellant-School Officials enjoining the latter from expelling the former from a public school.

This case involves the interpretative inter-relationship of the above cited Indiana Compulsory School Attendance Act, the General School Powers Act, which is Acts 1965, Chapter 307, § 202 as found in Ind. Stat. Ann. § 28-1710 (Burns 1971), I.C. 1971, 20-5-2-2, the Juvenile Court Act which is Acts 1945, Chapter 347, as amended, which is found in Ind. Stat. Ann. § 9-3204 (Burns 1956), I.C. 1971, 31-5-7-4 and Acts 1907, Chapter 278 as found in Ind. Stat. Ann. § 28-6105 (Burns 1970), I.C. 1971, 20-4-1-6.

The facts in this case are not in dispute and the controversy concerns itself purely with a question of law. It is admitted that on October 30, 1970, the Plaintiff-Appellee, Phil Easterly, was a minor under the age of sixteen years. He was expelled by the Appellants from Salem Community High School for the remainder of the fall semester. According to the evidence, Phil Easterly had been a "problem student" and the principal of the school had on four occasions contacted the student's mother for personal conferences and had engaged in two telephone conferences with her in regard to Phil's misconduct before he was expelled. The student was late for class fourteen times in October, 1970, and regularly left the study hall without permission. He was disorderly during sessions of the Junior Band and regularly used four letter obscenities in the presence of female students and teachers. He refused to sit

in his assigned seat, he talked constantly in class, he used profanity in class, he threatened to strike a female teacher, and he defaced school property. The evidence indicated that all of the above conduct was contrary to the rules and regulations of this public school. On the basis of the above evidence, the Trial Court found that Phil Easterly was an incorrigible and delinquent child. However, the Trial Court held that under the Indiana Compulsory School Attendance Act, the Appellants as school officials had no power or authority to expel Phil Easterly from Salem Community High School for such misconduct.

At the outset, it is not disputed that a court exercising juvenile jurisdiction under the Indiana Juvenile Court Act has the authority to expel from a public school a student under the age of sixteen years. It is also clear that such a Juvenile Court has the authority and jurisdiction to expel a student under the age of sixteen years under the proviso in the Indiana Compulsory School Attendance Act which states:

> "Provided, further, that the judge of the court having juvenile jurisdiction may suspend the provisions of this act in cases of juvenile delinquents and incorrigibles whenever, in his judgment, the welfare of the child warrants such action." Ind. Stat. Ann. § 28-5310 (Burns 1970), I. C. 1971, 20-12-25-1.

The question to be determined here is whether or not such a Juvenile Court has the *sole* jurisdiction to expel a student under the age of sixteen from a public school for admitted violations of reasonable rules.

In regard to earlier similar statutes providing for the creation and operation of public schools, our Supreme Court in *State, ex rel. Andrew* v. *Weber*, 108 Ind. 31, 8 N. E. 708 (1886) stated:

> "In section 4497, R.S. 1881, in force since August 16th, 1869, it is provided as follows: "The common schools of the State shall be taught in the English language; and the trustee shall provide to have taught in them orthography, reading, writing, arithmetic, geography, English grammar,

physiology, history of the United States, and good behavior, and such other branches of learning and other languages as the advancement of pupils may require and the trustees from time to time direct."

"Under this statutory provision, and others of similar purport and effect, to be found in our school laws, it was competent, we think, for the trustees of the school city of Laporte to enact necessary and reasonable rules for. the government of the pupils of its high school, directing what branches of learning such pupils should pursue, and regulating the time to be given to any particular study, and prescribing what book or books should be used therein. Such trustees were and are required, by the express provisions of section 4444, R. S. 1881, in force since March 6th, 1865, to "take charge of the educational affairs" of such city of Laporte "they may also establish graded schools, or such modifications of them as may be practicable; and provide for admitting into the higher departments of the graded school, from the primary schools of their townships, such pupils as are sufficiently advanced for such admission."

"The power to establish graded schools carries with it, of course, the power to establish and enforce such reasonable rules as may seem necessary to the trustees in their discretion, for the government and discipline of such schools, and prescribing the course of instruction therein."

In a similar vein, more recently, in *School City of East Chicago* v. *Sigler*, 219 Ind. 9, 36 N. E. 2d 760, 762 (1941), our Supreme Court said:

"A statute requires school trustees to "take charge of the educational affairs of their respective townships, towns and cities." § 28-2410, Burns' 1933, § 5967 Baldwin's 1934. They are required to furnish teachers and equipment "for the thorough organization and efficient management of said schools." The power to make reasonable rules and regulations to that end cannot be successfully challenged. Fertich v. Michener (1887), 111 Ind. 472, 11 N. E. 605, 14 N. E. 68; State, ex rel. v. Beil (1901), 157 Ind. 25, 60 N. E. 672. . . .

\* \* \* \* \*

"The board, not the courts, is charged with the duty of managing the school system and so long as it acts with

fairness, its decision on matters within its discretion are not subject to judicial review."

In 1944, the then State Superintendent of Public Instruction submitted to the Honorable James A. Emmert, as Attorney General of Indiana, the following question:

"Who has the legal right to exclude or suspend a pupil from the Public Schools of Indiana?"

The answer to this question appears in 1944 Op. Atty. Gen. 451 where it is stated:

". . . . I am of the opinion the school teacher, the principal or superintendent of the school, unless prevented by a rule or regulation of the school board or township trustee, and the school board or township trustee for the school corporation, have the legal right to suspend or exclude a pupil from the public schools of Indiana, subject to the right of review of their actions in such cases. Specific questions regarding exclusion from school of physically handicapped children, and special laws authorizing health officers to exclude children from attending school in certain cases, are not intended to be covered in this opinion."

Again in 1953, the State Superintendent of Public Instruction submitted to the Honorable Edwin K. Steers, as Attorney General, the following question:

"Is the judge of the Juvenile Court by 1945 Acts, Chapters 347, 356 and 218 creating a Juvenile Court and declaring its jurisdiction in matters of delinquent, dependent and neglected children as well as in instances of of contributors to delinquency, dependency and neglect given authority superseding that of school authorities?"

The answer of the Attorney General appears in an official opinion found at 1953 Op. Atty. Gen. 87 at page 91 where it is stated:

"From the foregoing, it may reasonably be concluded that under the divisional branches of government, the Constitution has seen fit to place the school system in the hands of the administrative branch of the government, pursuant to

such laws as are enacted by the legislature. School officials must necessarily establish, maintain and operate schools and in doing so, they are given reasonable discretion in determining what is necessary to maintain discipline even to the point of exclusion of pupils where the welfare of the school system requires it. From the foregoing it is not meant to imply that arbitrary or capricious actions of officers are beyond the jurisdiction of the courts, but the rule is well settled that where the matter is one for the discretion of school officials, is reasonably exercised in the interest of the school system, it does not become a matter for judicial interference. Otherwise, the courts would run the schools and not the administrative branch of the government.

"The 1945 statutes referred to in your question concerning the jurisdiction of the judge of the Juvenile Court, being Ch. 218 (Sec. 10-812 et seq. Burns' 1951 Supp.) ; Ch. 347 (being Sec. 9-3101 et seq. Burns' 1951 Supp.) ; and Ch. 356 (being Sec. 9-3201 et seq. Burns' 1951 Supp.), are very comprehensive statutes. It is not deemed necessary to set these out in detail except to say generally that they give jurisdiction to the Juvenile Court over the children who are declared delinquent, dependent, or neglected. It gives substantial jurisdiction over the parents and any other person contributing to such status of such children. Under Sec. 15 of the last referred to statute (9-3215, Burns' 1951 Supp.) the court has the power to commit the child to a suitable public institution or agency or to a suitable private institution or agency.

"It is pertinent to note the purposes of Ch. 356 of the Acts of 1945, supra, are stated in Sec. 1 of said Act (Sec. 9-3201, Burns' 1951 Supp.), and are as follows:

"The purpose of this act (sections 9-3201—9-3224) is to secure for each child within its provisions such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the state; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents.

"The principle is hereby recognized that children under the jurisdiction of the court are subject to the discipline and entitled to the protection of the state, which may intervene to safeguard them from neglect or injury and

to enforce the legal obligations due to them and from them."

"It is to be noted, the above statement of purpose requires a construction of said act consistent with the "best interests of the state" and is for the purpose of insuring to such child "the legal obligations due to them."

"In the case of State ex rel. Gannon v. Lake Circuit Court (1945), 223 Ind. 375, 61 N. E. (2d) 168, the court held that Chs. 218, 347 and 356 of the Acts of 1945 must be read and construed in *pari materia* with each other.

"It is to be further observed the above statutes give the Juvenile Court the right to punish children who are habitual truants (Sec. 9-3201 Burns' 1951 Supp.). It must however be borne in mind that these statutes as well as all other statutes applicable to a particular situation must be considered in *pari materia* with each other in determining the legislative intent and so as not to violate any of the provisions of our State Constitution."

*Sherfey* v. *City of Brazil* (1937), 213 Ind. 493, 497, 498 13 N. E. (2d) 568.

\* \* \* \* \*

"I am therefore of the opinion that the Judge of the Juvenile Court does not have authority superseding that of school officials on the question of exclusion of children from school for cause."

Attorney Generals Emmert and Steers stated the law correctly in regard to this matter.

One statute which expressly confers certain powers on school authorities is Acts 1907, Chapter 278 as found in Ind. Stat. Ann. § 28-6105 (Burns 1970) I.C. 1971, 20-4-1-6 which states:

"The common schools of the State of Indiana, both elementary and high schools, shall be open to all children until they complete the courses of study in said common schools, *subject to the authority of the teachers therein and to all the rules and regulations provided by the proper authorities for the government of such schools.* It shall be unlawful for the pupils in any of the elementary or high schools of this state to form secret societies, fraternities or other similar organizations in such schools; *and the Board of School Commissions or Board of Trustees of any school,*

*town or city and the Trustee of any school, township, and the Superintendent of any school are hereby required to enforce the provisions of this act by suspending, or, if necessary, expelling, a student in any elementary or high school who refuses or neglects to obey such rules or regulations or any of them."* (our emphasis)

The above Act of 1907, provides that school authorities may properly promulgate rules and regulations relating to certain conduct in public schools. The statute further gives school authorities the right to enforce such general rules and regulations by suspension or expulsion.

The General School Powers Act which is Acts 1965, Chapter 307, § 202 as found in Ind. Stat. Ann. § 28-1710 (Burns 1971), I.C. 1971, 20-5-2-2 states in part as follows:

"In carrying out the school purposes of each school corporation, its governing body acting on its behalf shall have the following specific powers:

\* \* \* \* \*

"(17) To prepare, make, enforce amend and/or repeal rules, regulations and procedures for the government and management of the schools, property, facilities and activities of the school corporation, its agents, employees and pupils and for the operation of its governing body, which rules, regulations and procedures may be designated by any appropriate title such as 'policy handbook' 'by-laws' 'rules and regulations.' ..."

The General School Powers Act is the broad grant of authority to the public school authorities in the State of Indiana "to prepare, make, and *enforce* ..." (our emphasis) rules and regulations pertaining to the operation of the public schools in the State of Indiana. The legislature cannot effectively confer upon school authorities power to conduct schools and to make all rules necessary for the orderly process of education, yet deny them the power to *effectively* enforce such rules. One of the most elementary enforcement devices is the suspension or expulsion of a student. The authority granted the school officials in the General School

Powers Act is broad enough to authorize the public school officials to promulgate certain reasonable rules and regulations for the conduct of students in the public schools and to provide, in appropriate cases, for the expulsion of students for violations of such reasonable rules and regulations. This grant of authority is broad enough to authorize public school officials to expel a student under the age of sixteen years for a violation of reasonable rules and regulations.

Since it is our obligation to read statutes together and to give each statute its intended legislative effect where possible, we do not believe that the General Assembly intended by the enactment of the Juvenile Court Act of 1945 or the Compulsory School Attendance Act to withdraw the authority of public school officials, in an appropriate case, to expel students for clear violation of reasonable rules and regulations.

The fundamental legislative purpose of the Compulsory School Attendance Act was to prevent parents from denying their children certain minimal education. *State* v. *Bailey*, 157 Ind. 324, 61 N.E. 730 (1901). The Trial Court construed it as a limitation of the power on the school authorities rather than a standard to be observed by children and their parents. In this the Trial Court misread the intent of the General Assembly.

The decision that we reach here is in accord with the general statement of authority as found in 47 Am. Jur., *"Schools"* § 178:

"Ordinarily, the school authorities have the right to define the offenses for which the punishment or exclusion from school may be imposed, and to determine whether the offense has been committed, the limitation on this authority being that it must in both respects be reasonably exercised. "The power of expulsion given to the directors is not limited to cases of infraction of such rules as they may have theretofore adopted, but extends to cases where they may have become satisfied that the interests of the school require the expulsion of a pupil on account of his gross misbehavior. However, although the discretion vested in the school

authorities in this respect is very broad, they will not be permitted arbitrary."

What we have said here in no way infringes on the authority of the Juvenile Court to act within their jurisdiction in cases which may involve infractions of reasonable rules and regulatons of public schools. We simply hold that there is statutory authority for public schools to act *in addition to* the authority granted to Juvenile Courts in an appropriate case involving the infraction of reasonable rules and regulations.

The school authorities in this case do not contend that they have unlimited powers to expel students including students under the age of sixteen years. The school authorities here do not contend that there is no place for the judiciary, including but not limited to the Juvenile Courts, in such matters. The school authorities here readily admit that the rules and regulations with reference to the conduct of the public schools and with reference to student conduct therein must be reasonable and must be reasonably applied so as not to violate due process of law. There is no contention in this case that the rules and regulations here were unreasonable or unreasonably applied. Any unreasonable rule or regulation or the unreasonable application of any rule or regulation is subject to review by the courts in an appropriate proceeding. The school officials here, however, do deny that *only* the courts having juvenile jurisdiction have the *sole* and *exclusive* right to enforce reasonable rules and regulations by expelling students for violations thereof. The judiciary is always in the wings to exercise restraint when a proper case is presented as to the fairness of a rule and its application in an individual case, but that is not to say, that a school system's hands should be tied so that it cannot, in an appropriate case, suspend or expel an unruly student. As a matter of law, the Trial Court construed the authority of public school officials in this regard too narrowly.

This case should be and hereby is reversed and remanded with instructions to the Trial Court to dissolve the permanent injunction and to enter a judgment not inconsistent with this opinion.

Reversed and remanded.

Hoffman, C. J., Staton and White, J.J., concur.

NOTE.—Reported in 275 N. E. 2d 317.