Georgene EUKERS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 34A02–9907–CR–502.

Court of Appeals of Indiana.

May 15, 2000.

William C. Menges, Jr., Kokomo, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Freeman, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

Following a bench trial, Georgene Eukers was found guilty of violating Indiana Code section 20–8.1–3–34, regarding compulsory school attendance, a Class B misdemeanor. Eukers now appeals her conviction. We affirm.

### Issue

Eukers raises the following restated issue for our review: whether the delegation of authority by the legislature to local school corporations to establish attendance policies, the violation of which constitutes a criminal offense, is an unconstitutional delegation of the legislative function.

### Facts and Procedural History

The facts most favorable to the judgment reveal that Eukers is the mother and custodial parent of M.E. M.E. is a student at Darrough Chapel Elementary School in Kokomo, Indiana. The Kokomo–Center Township Consolidated School Corporation has an attendance policy which provides that after a student receives ten (10) absences, a student must obtain a doctor's excuse for any subsequent absences. After a student accumulates twenty unexcused absences, the school attendance officer notifies the county prosecutor, who may elect to bring formal charges against the student's parent. Eukers signed a document prior to M.E.'s enrollment in school which indicated that she understood the school's attendance policy.

Between September of 1997 and January of 1998, M.E. accumulated twenty-three absences. Consequently, the State charged Eukers with violating Indiana Code section 20–8.1–3–34. Following a bench trial, Eukers was found guilty as charged and sentenced to one hundred eighty days in the Howard County Jail, suspended, and one year of probation. This appeal ensued.

### Discussion and Decision

Eukers contends that the legislature, by permitting Indiana's school districts to es-

tablish their own attendance polices, has impermissibly delegated "the purely legislative function of defining the elements and acts which constitute criminal activity . . . to the individual school attendance districts." Brief of Appellant at 7. Eukers argues that the school's attendance policy violates Article I, sections 16, 18, and 23 of the Indiana Constitution.[1] Essentially, Eukers argues that the Powers Act is an unconstitutional delegation of authority by the General Assembly to school corporations.

## I. Standard of Review

 When a statute is challenged as an alleged violation of the Indiana Constitution, our standard of review is well-established. Every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing. *State v. Rendleman,* 603 N.E.2d 1333, 1334 (Ind.1992); *Adoptive Parents of M.L.V. v. Wilkens,* 598 N.E.2d 1054, 1058 (Ind.1992); *Eddy v. McGinnis,* 523 N.E.2d 737, 738 (Ind.1988); *Miller v. State,* 517 N.E.2d 64, 71 (Ind.1987). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. *Adoptive Parents of M.L.V.,* 598 N.E.2d at 1058. If there are two reasonable interpretations of a statute, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless such is required by the unambiguous language of the statute. *Price v. State,* 622 N.E.2d 954, 963 (Ind.1993); *Smith v. Indianapolis St. Ry. Co.,* 158 Ind. 425, 427–28, 63 N.E. 849, 850 (1902).

 Questions arising under the Indiana Constitution are to be resolved by "examining the language of the text in the context of the history surrounding its

drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Indiana Gaming Comm'n v. Moseley,* 643 N.E.2d 296, 298 (Ind.1994). *See also Collins v. Day,* 644 N.E.2d 72, 76 (Ind.1994); *Price,* 622 N.E.2d at 957; *Bayh v. Sonnenburg,* 573 N.E.2d 398, 412 (Ind.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992); *State Election Bd. v. Bayh,* 521 N.E.2d 1313 (Ind.1988). In construing the constitution, "a court should look to the history of the times, and examine the state of things existing when the constitution or any part thereof was framed and adopted, to ascertain the old law, the mischief, and the remedy." *Sonnenburg,* 573 N.E.2d at 412 (citing *State v. Gibson,* 36 Ind. 389, 391 (1871)). Because the "intent of the framers of the Constitution is paramount in determining the meaning of a provision," *Eakin v. State ex rel. Capital,* 474 N.E.2d 62, 64 (Ind.1985), this Court will consider "the purpose which induced the adoption," *id.* at 65, "in order that we may ascertain what the particular constitutional provision was designed to prevent." *Northern Indiana Bank & Trust Co. v. State Bd. of Fin. of Indiana,* 457 N.E.2d 527, 529 (Ind.1983).

## II. Unconstitutional Delegation of Authority

### A. General Powers Act

The General School Powers Act (the "Powers Act") statutorily invests local school corporations with broad managerial autonomy to formulate and implement educational policies. Ind.Code §§ 20–5–1 to –6. The Powers Act provides both general and specific powers to school corporations. With regard to specific powers, the Powers Act provides in pertinent part that:

---

1. We note that Eukers fails to make a cogent argument as to why the delegation of authority to schools by the General Assembly violates Article I, sections 16, 18, and 23 of the Indiana Constitution. Thus, we will only address the issue of the propriety of the delegation of authority by the legislature to school corporations to establish attendance policies. *See* Ind. Appellate Rule 8.3(A)(7).

[i]n carrying out the school purposes of each school corporation, its governing body acting on its behalf shall have the following specific powers: ... To prepare, make, enforce amend and/or repeal rules, regulations and procedures for the government and management of the schools, property, facilities and activities of the school corporation, its agents, employees and pupils and for the operation of its governing body, which rules, regulations and procedures may be designated by any appropriate title such as "policy handbook," "bylaws," or "rules and regulations." ·

Ind.Code § 20–5–2–2(17).

One of the most elementary regulations of a school is an attendance policy. We believe that the broad language of the Powers Act authorizes public school officials to promulgate and enforce school attendance policies. Typically, a school board will constitute the governing body which formulates and promulgates attendance policies for a school. In the present case, the Kokomo–Center Township School Board adopted an attendance policy for the school district. School boards constitute an administrative body and are charged with the duty of administering the law governing public schools in their districts. *Myers v. Greater Clark County Sch. Corp.,* 464 N.E.2d 1323, 1329 (Ind.Ct. App.1984). Thus, the Powers Act vested the Kokomo–Center Township School Board with the authority to implement an attendance policy for all students.

After adopting the attendance policy, the school board placed it in a handbook which was mailed to the parents of all students who attended school in the Kokomo–Center Township Consolidated School District. The attendance policy contained in the handbook provides in pertinent part that:

[t]he first ten (10) absences must be covered by either phone calls, notes and/or doctor's statements to be considered excused.... Any additional absences following ten (10) absences, which may have previously been covered by a phone call, note, and/or doctor's statement, will be unexcused unless covered by a doctor's statement. Continued unexcused absences may result in a formal referral for educational neglect. A student/parent conference will be required when absences become frequent or excessive.

R. 341.

We have stated that the "legislature cannot effectively confer upon school authorities power to conduct schools and make all rules necessary for the orderly process of education, yet deny them the power to effectively enforce such rules." *Salem Community Sch. Corp. v. Easterly,* 150 Ind.App. 11, 18, 275 N.E.2d 317, 322 (1971). Therefore, the Powers Act also provides schools with the authority to enforce their attendance policies, such as requiring a child with unexcused absences to attend Saturday school or after-school detention. Although school officials may take disciplinary action against a child for unexcused absences, school officials have no recourse against the parent.

### B. Compulsory Attendance Act

However, the General Assembly has provided the State with a means of punishing a parent for failing to require their child to attend school by enacting the Compulsory Attendance Act [2] (the "Attendance Act"). Indiana Code section 20–8.1–3–1 provides that "[t]he legislative intent [of the Attendance Act] is to provide an efficient and speedy means of insuring that children receive a proper education whenever it is reasonably possible." Furthermore, we have held that the fundamental legislative purpose of the Attendance Act was to prevent parents from denying their children certain minimal education. *Salem Community Sch. Corp.,* 275 N.E.2d at 322 (citing *State v. Bailey,* 157 Ind. 324, 61 N.E. 730 (1901)).

---

**2.** Ind.Code §§ 20–8.1–3–1 to –37.

The Attendance Act provides in pertinent part that:

> [i]t is unlawful for a parent to fail, neglect, or refuse to send his child to a public school for the full term as required under this chapter unless the child is provided with instruction equivalent to that given in the public schools. This section does not apply during any period when the child is excused from attendance under this chapter.

Ind.Code § 20–8.1–3–34. "A person who knowingly violates this chapter commits a Class B misdemeanor." Ind.Code § 20–8.1–3–37. Thus, a parent who fails to ensure that his or her child attends school is subject to a possible criminal penalty in Indiana.

### C. Prosecutorial Discretion

Under the current statutory scheme in Indiana, a prosecutor who is aware of a parent who has allowed his or her child to accrue a single unexcused absence may criminally prosecute a parent. *See* Ind. Code § 20–8.1–3–34 to–37. In addition, a prosecutor may decline to press charges against a parent whose child has violated a school's attendance policy. The statutorily triggering event for possible criminal prosecution is one unexcused absence, not the violation of a particular school's attendance policy. Thus, a violation of a school's attendance policy does not per se subject a parent to criminal liability.

Moreover, the discretion whether or not to prosecute a parent for violating Indiana Code section 20–8.1–3–34 lies solely with the prosecutor, even though an attendance officer of a school may have provided the information that a child has an unexcused absence. It is well-settled that the decision whether to prosecute lies within the prosecutor's sole discretion. *Bowers v. State*, 500 N.E.2d 203, 204 (Ind.1986) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Neeley v. State*, 457 N.E.2d 532 (Ind.1983)). "It is the function of the prosecuting attorney to investigate crimes and bring criminal charges." *Meyers v. State*, 266 Ind. 513, 517, 364 N.E.2d 760, 763 (1977). Further, our legislature has vested the prosecutor with the discretion to dismiss pending charges. *Id.*; *see also* Ind.Code § 35–34–1–13 ("Upon motion of the prosecuting attorney, the court shall order the dismissal of the indictment or information."). This court cannot substitute its discretion for that of the prosecuting attorney. *Johnson v. State*, 675 N.E.2d 678, 683 (Ind.1996). Thus, a school's attendance policy does not unconstitutionally impinge on the legislature's exclusive power to establish and define criminal offenses.

### Conclusion

Based on the foregoing, we hold that the delegation of authority to school districts to establish attendance policies is not unconstitutional because the prosecutor is vested with sole discretion by the legislature in deciding whether to prosecute a parent under 20–8.1–3–34, and this discretion operates independently of a school's attendance policy.

Affirmed.

SHARPNACK, C.J., and BAILEY, J., concur.