

**FILED**

Dec 18 2018, 9:14 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Karl L. Mulvaney
Nana Quay-Smith
Bingham Greenebaum Doll, LLP
Indianapolis, Indiana

R. T. Green
Kellie C. Clark
Blackburn & Green
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Caren L. Pollack
Zachary J. Stock
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Katrina Murray and Aquila F. Flynn, as Co-Personal Representatives of the Estate of Jaylan T. R. Murray, Deceased, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Indianapolis Public Schools and Arlington Community High School, <br><br> *Appellees-Defendants.* | December 18, 2018 <br><br> Court of Appeals Case No. 18A-CT-1955 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James A. Joven, Judge <br><br> Trial Court Cause No. 49D13-1703-CT-11107 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Plaintiffs, Katrina Murray and Aquila F. Flynn, as Co-personal Representatives of the Estate of Jaylan T.R. Murray (collectively, Appellants), appeal the trial court's summary judgment in favor of Appellees-Defendants, Indianapolis Public Schools (IPS) and Arlington Community High School (Arlington) (collectively, School) on Appellants' Complaint for wrongful death.

We reverse and remand for further proceedings.

# ISSUES

Appellants present us with one issue on appeal, which we restate as the following three issues:

  (1) Whether Appellants waived their argument on appeal by failing to respond to the School's motion for summary judgment;

  (2) Whether a genuine issue of material fact exists with respect to the School's duty to supervise its students and monitor the School's exits; and

  (3) Whether a genuine issue of material fact exists which precludes the entry of summary judgment based on contributory negligence.

# FACTS AND PROCEDURAL HISTORY

Jaylan Murray (Jaylan) was a 16-year-old student at Arlington. Jaylan's parents were divorced and he lived with his father, Marcus Murray (Marcus). At home, Jaylan was openly defiant to Marcus and would frequently run away.

As a result, he had an open case file with the Indiana Department of Child Services (DCS). However, even though Jaylan would run away from home, he would usually still go to school. During Jaylan's absences, Marcus knew that Jaylan would either be with a friend or with the girl across the street. Marcus would report Jaylan missing to the police, and DCS would pick Jaylan up and call Marcus to retrieve his son. "Usually, the police report kicks out to the school, and they would know that he's a runaway." (Appellants' App. Vol. II, p. 43). In addition, Marcus had informed Stan Law, Arlington's principal, about Jaylan's issues.

[5] On January 25, 2016, Jaylan ran away from home. Although Marcus knew where Jaylan was, on January 29, 2016, Marcus reported Jaylan's absence to the police. Jaylan was murdered on the afternoon of February 3, 2016, and his body was discovered around 4:02 p.m. at the apartment complex across the street from Arlington. Little is known about the circumstances surrounding Jaylan's murder. The police report merely indicated that Jaylan's death was caused by a firearm, and was not gang-related.

[6] Marcus was later informed that, on February 3, 2016, Jaylan had gone to Arlington around 1:00 p.m. and had signed in at the front desk. After seeing some of his friends at school, he had left the premises without Arlington's knowledge, without signing out, and presumably through an unlocked and unmonitored exit. Arlington admitted that Jaylan had signed in at the front office on February 3, 2016 at 1:07 p.m. and did not sign out when he left. A surveillance video shows Jaylan walking past door #16 at approximately 1:24

p.m. Arlington's students are expected to enter and exit through the front entrance to the building and to sign in and out if arriving or leaving during the regular school day. The front entrance provides the only entry access to the building. "No other doors can be opened from the outside. . . . A non-compliant student could exit through any exit door, as fire codes prohibit locking exit doors." (Appellants' App. Vol. II, p. 60).

[7] On March 20, 2017, Appellants filed a Complaint for wrongful death against the School, alleging that the School had been negligent for failing to properly supervise and monitor its students during school hours. On June 15, 2018, the School filed a motion for summary judgment, memorandum of law, and designation of evidence. In its motion, the School claimed that it was immune from any failure to adopt or enforce an attendance policy under the Indiana Tort Claims Act, and asserted that Jaylan was contributorily negligent in his own murder. On July 19, 2018, the trial court summarily granted the motion and entered summary judgment for the School.

[8] The following day, July 20, 2018, Appellants filed a motion to set aside the summary judgment. In their motion, they explained that on June 25, 2018—ten days after the School had moved for summary judgment—counsel had contacted the School's counsel to request additional time to respond to the motion for summary judgment as they intended to conduct more extensive discovery and depose additional witnesses. The School's counsel agreed to the request, advising in writing that they would not oppose the extension of time. However, due to confusion associated with a staffing change precipitated by

one of Appellants' counsels' departure from the law firm, the request for an extension of time was inadvertently not filed and the trial court entered summary judgment. On August 3, 2018, the School opposed Appellants' motion to set aside. On the same date, and without a hearing, the trial court summarily denied Appellants' motion to set aside the summary judgment.

[9] Appellants now appeal. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Waiver of the Appeal*

[10] Prior to turning to the merits of Appellants' appeal, we address the School's threshold procedural argument that the claims advanced by Appellants are waived because they failed to respond to the School's summary judgment motion. Acknowledging the authority to the contrary, the School nevertheless requests this court to reconsider the current precedents regarding a party's failure to respond to a summary judgment motion, as they claim this case law to be unsanctioned by our supreme court, to be inconsistent with the purpose of the waiver rule, and to be contrary to the preservation of judicial economy.

[11] We agree with the School that as a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *GKC Ind. Theatres, Inc. v. Elk Retail Inv'r, LLC*., 764 N.E.2d 647, 651 (Ind. Ct. App. 2002). This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by

the parties. *Id.* Appellate courts, on the other hand, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision. *Id.*

[12] However, with respect to summary judgment, Indiana Trial Rule 56(C) stipulates that "summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the [c]ourt shall make its determination from the evidentiary matter designated to the [c]ourt." As such, the summary judgment practice differentiates from other motions because it obligates the trial court to consider the merits and the designated evidence regardless whether a response is filed. This distinction has been recognized for several decades and Indiana's precedents have promulgated that the party opposing summary judgment has no obligation to respond to the motion until the moving party satisfies its burden and shifts the evidentiary burden to the non-moving party. *See, e.g., Layman v. Atwood*, 370 N.E.2d 933, 935 (Ind. Ct. App. 1977). Accordingly, even where, as here, the motion for summary judgment is unopposed, the movant is not entitled to judgment until the trial court has established that there is no genuine issue of material fact on an element of the claim and that judgment in the party's favor is proper. *See, e.g., Templeton v. City of Hammond*, 679 N.E.2d 1368, 1371 (Ind. Ct. App. 1997) (judgment reversed because the moving party's designated evidence did not support summary judgment). Our supreme court affirmed this practice in *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 103 (Ind. 1997), when it cautioned that "[a] party opposing summary judgment is not required

to come forward with contrary evidence until the moving party demonstrates the absence of a genuine issue of material fact." "In other words, summary judgment is awarded on the merits of the motion, not on technicalities." *Murphy v. Curtis*, 930 N.E.2d 1228, 1233 (Ind. Ct. App. 2010), *trans. denied*.

[13] We recognize that "summary judgment is a lethal weapon and courts must be ever mindful of its aims and targets and beware of overkill in its use. *Bunch v. Tiwari*, 711 N.E.2d 844, 847 (Ind. Ct. App. 1999). As such, "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014). In light of the well-established precedent and in absence of a persuasive reason to deviate from this jurisprudence, we decline the School's invitation to waive Appellants' argument.

## II. *Negligence*

### A. *Standard of Review*

[14] In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. A fact is 'material' for summary judgment purposes if

it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607.

[15] We observe that, in the present case, the trial court did not enter findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## B. *Failure to Supervise and Monitor*

[16] In their Complaint, Appellants contend that the School breached its duty by "failing to properly supervise and monitor their students during school hours" in accordance with Indiana Code section 20-33-8-8. (Appellants' App. Vol. II, p. 16). Focusing on the School's duty to exercise ordinary and reasonable care in supervising Jaylan, Appellants claim that because the School was notified that Jaylan was a runaway minor before he appeared at the front office, the School should have taken measures preventing him from returning to the street.

[17] In an attempt to be shielded by immunity derived from the Indiana Tort Claims Act (ITCA), the School characterizes Appellants' claim as a failure to adopt or

enforce a policy under Indiana Code section 34-13-3-3(8)(b). Interpreting 'policy' as an act within the School's operational power, it claims that the foundation of Appellants' contention is effectively the School's "failure to adopt or enforce an attendance policy that would physically restrain Jaylan inside [Arlington]." (Appellees' Br. p. 15).

## 1. *ITCA*

The ITCA is in derogation of the common law and we therefore construe it narrowly against the grant of immunity. *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 281 (Ind. 1994). The party seeking immunity has the burden of establishing its conduct comes within the provisions of the ITCA. *Id.* "Whether a particular governmental act is immune is a question of law for the court to decide, although the question may require extensive factual development." *Barnes v. Antich*, 700 N.E.2d 262, 265 (Ind. Ct. App. 1998), *trans. denied*. The ITCA expressly states that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from [t]he adoption and enforcement of or failure to adopt or enforce . . . a policy[.]" I.C. § 34-13-3-3(8)(B). In the absence of a definition of 'policy' under the Act, the School interprets the phrase as encompassing its statutorily derived power to formulate and implement an attendance policy under the General School Powers Act. *See* I.C. §§ 20-5-1 to -6; *Eukers v. State*, 728 N.E.2d 219, 222 (Ind. Ct. App. 2000). Accordingly, recasting Appellants' common law negligence claim as a challenge to the School's failure to adopt an attendance policy that would detain Jaylan in the school building, the School is

immune from any liability pursuant to the ITCA's provisions. (Appellee's Br. p. 15).

[19] Without having to decide whether the ITCA's reference to a policy encompasses the School's broad interpretation of an attendance policy, we cannot agree with the School that Appellants' claim is predicated upon the School's failure to enforce attendance. The designated section of Appellants' Complaint contends that "[t]he incident and death of [Jaylan] was the proximate result of the negligence of [the School], for failing to properly supervise and monitor their students during school hours." (Appellants' App. Vol. II, pp. 15-16). At no point during these proceedings have Appellants claimed that Jaylan should been forced to attend class or made a complaint about his possible suspension or expulsion. Rather, they advance the argument that as the School was aware of his truancy and his status as a runaway, the school should have supervised him until he could be safely released to his parents or the authorities. Accordingly, as the thrust of Appellants' argument focuses on Jaylan's safety and not the School's power to expel, suspend, or formulate the requirements for a student's school attendance, the School's immunity from liability pursuant to ITCA is not applicable.

### 2. *Appellants' Negligence Claim*

[20] Unlike a school's immunity for enforcement of its attendance policy, we have long recognized that school authorities owe a "duty . . . 'to exercise reasonable care and supervision for the safety of the children under their control.'"

*Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 974 (Ind. 2001) (*quoting Miller v. Griesel*, 308 N.E.2d 701, 706 (Ind. 1974)). Accordingly, "[p]ublic schools in Indiana indisputably have a responsibility, albeit a basic one, towards their students. With respect to negligence, a public [] school has only one duty at common law—the duty to exercise ordinary and reasonable care." *LaPorte Cmty. Sch. Corp. v. Rosales*, 963 N.E.2d 520, 524 (Ind. 2012). Although this duty may be "ordinary," it is nonetheless sensitive to context. *Moore v. Hamilton Southeastern Sch. Dist.*, 2013 WL 4607228, *8 (S.D. Ind. 2013). Most obviously, the degree of care required is amplified when its objects are children, "whose characteristics make it likely that they may do somewhat unreasonable things," and over whom the school exercises partial custodial care. *Miller*, 308 N.E.2d at 706 (citing Restatement (Second) of Torts § 320 (1965)). There is no bright-line rule confining a school's duty to events occurring on school grounds during school hours, though the particular circumstances of a student's injury will bear on the factual questions of breach and causation. *Mangold*, 756 N.E.2d at 974-75 (holding a school's liability could extend to injury occurring off school property).

[21] Since it is the safety of a student, "not a more holistic measure of their well-being or educational fulfillment," that lies at the heart of the common-law tort duty owed by schools, the facts appropriate for consideration are those tending to show the School's negligence in face of a danger to Jaylan of which it was aware of should have been aware. *See Moore*, 2013 WL 4607228, *9; *DiBortolo v. Metro. Sch. Dist. of Wash. Tp.*, 440 N.E.2d 506, 509 (Ind. Ct. App. 1982).

Adolescents are more susceptible than other segments of the population to certain dangers, including substance abuse, auto accidents, and self-harm. Even though a school cannot be charged with an unlimited duty to guard against the possibility of a student's injury, that calculus may well change, however, when the school has reason to know of a student's heightened vulnerability. *See, e.g., Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F.Supp.2d 942, 955 (S.D. Ind. 2007) (holding that a breach of duty of care existed where school officials placed two students on a bus together when they had received warnings that one had threatened violence against the other.)

[22] The designated evidence in light most favorable to Appellants reflects that 16-year-old Jaylan was a frequent runaway with an active DCS case file, and was reported missing on January 29, 2016. This information was "kick[ed] out to the school" to alert school officials because, even though Jaylan would run away from home, he would usually still go to school. (Appellant's App. Vol. II, p. 43). Around 1:00 p.m. on February 3, 2016, while still a runaway and arriving after the start of the regular school day, Jaylan signed in at the front desk at Arlington. It appears that Jaylan left the school again later that afternoon through an unmonitored school exit.

[23] Children have been skipping school "[s]ince at least the days of Huck Finn and Tom Sawyer." *Kazanjian v. School Bd. of Palm Beach Co.*, 967 So 2d 259, 263 (Fla. 2007). Therefore, a school need not possess a crystal ball to understand that a student who has been reported a runaway before may run away again,

and to know that meeting its duty to protect him might require additional attention to protective measures.

[24] Here, the School admitted Jaylan to the building and then let him roam the halls unsupervised after signing in without contacting Murray, the police, or DCS and with the knowledge that Jaylan could depart the premises from any unsecured door and run away again at any time. While the designated facts could support a conclusion that the School failed to exercise reasonable care to supervise and monitor Jaylan given its presumed awareness of Jaylan's propensity to run away, reasonable minds might differ as to the particular extent and scope of the School's duty to ensure Jaylan's safety under these circumstances and, as such, the issue remains a factual one, and should properly be presented to the trier of fact. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371-72 (Ind. 1992) ("Only where the facts are undisputed and lead to but a single inference or conclusion may the court as a matter of law determine whether a breach of duty has occurred.") Accordingly, the issue before us is not appropriate for summary judgment and we reverse the trial court.

### III. *Contributory Negligence*

[25] Despite our conclusion that summary judgment cannot be granted on the School's duty to supervise and monitor Jaylan, we may nevertheless affirm the trial court's grant of summary judgment if we find that Jaylan was contributorily negligent for his injuries.

[26] When a tort claim is filed against a governmental actor, such as a public school, the Comparative Fault Act—which provides that "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery"—does not apply. I.C. §§ 34-51-2-2; -5; -6. *See Towers v. Clinton Cent. Sch. Corp.*, 855 N.E.2d 739, 745 (Ind. Ct. App. 2006), *trans. denied.* Rather, the common-law doctrine of contributory negligence applies. *Lee v. Bartholomew Consol. Sch. Corp.*, 75 N.E.3d 518, 523 (Ind. Ct. App. 2017). Therefore, "if a plaintiff is negligent to even a small degree and that negligence proximately contributes to his claimed damages, contributory negligence will operate as a complete bar to this action." *Id.*

[27] It is well established that a plaintiff is "contributorily negligent when his conduct falls below the standard to which he should conform for his own protection and safety." *Hill v. Gephart*, 54 N.E.3d 402, 406 (Ind. Ct. App. 2016), *clarified on reh'g, trans. denied.* Because "[n]egligence depends upon the lack of reasonable care that an ordinary person would exercise in like or similar circumstances," "contributory negligence is the failure of a person to exercise for his own safety that degree of care and caution which an ordinary, reasonable, and prudent person in a similar situation would exercise." *Id.* Generally, contributory negligence is a fact for the jury. *Id.* However, it may be a question of law appropriate for summary judgment "if the facts are undisputed and only a single inference can be drawn therefrom." *Id.* at 406-07.

[28]     Pointing to the designated evidence, the School contends that Jaylan was contributorily negligent to his own murder because he was engaged "in an illegal gun purchase on premises known for criminal activity." (Appellees' Br. p. 19). As the School was unaware of Jaylan's intentions, the School maintains that it could not have possibly anticipated the danger Jaylan faced when he left the building. On the other hand, Appellants point to conflicting evidence of Jaylan's actions after he left the School's premises and went to the apartments where he was killed.

[29]     Jaylan's friend told Marcus that Jaylan left the School to purchase marijuana, not to purchase a gun. Marcus was informed by the detective investigating his son's murder that Jaylan had previously purchased a gun and that he went to School to talk to a friend. Little is known about the circumstances surrounding Jaylan's murder. Although the police report indicated that Jaylan's death was caused by a firearm, the report only concluded that his death was not gang-related.

[30]     Minors often engage in unwise behavior but those choices do not automatically make them contributorily negligent as a matter of law. *See Doe v. Lafayette Sch. Corp.*, 846 N.E.2d 691, 700 (Ind. Ct. App. 2006), *reh'g denied*. While Jaylan's decision to leave the School's premises was ill-advised, in light of the conflicting designated evidence surrounding the reason for his truancy and his murder, it remains debatable whether Jaylan failed to exercise the same degree of care and caution which an ordinary, reasonable sixteen-year-old would exercise in a similar situation. Accordingly, as the record contains genuine issues of material

fact to preclude summary judgment on the basis of contributory negligence, we reverse the trial court's judgment.

# CONCLUSION

[31]     Based on the foregoing, we reverse the trial court's summary judgment because genuine issues of material fact exist as to the School's duty to supervise its students and to preclude the entry of summary judgment on the basis of contributory negligence.

[32]     Reversed and remanded for further proceedings.

[33]     Robb, J. concurs

Kirsch, J. dissents without separate opinion