**PARKVIEW HOSPITAL, INC.,**
**Appellant–Defendant,**

v.

**Mildred V. ROESE, Appellee–Plaintiff.**

No. 02A05–0009–CV–386.

Court of Appeals of Indiana.

May 25, 2001.

Rehearing Denied July 12, 2001.

Christine M. Stach, Rothberg Logan & Warsco LLP, Fort Wayne, IN, Attorney for Appellant.

Robert L. Thompson, Thompson & Rogers, Fort Wayne, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Parkview Hospital, Inc. ("Parkview"), appeals the trial court's granting of Mildred Roese's ("Roese") Motion to Quash Hospital Lien.

We reverse.

### ISSUE

Whether Indiana's Hospital Lien Statute requires Parkview to first seek payment for medical services from Medicare before filing a lien against Roese.

## FACTS

The undisputed facts reveal that the Department of Health and Human Services ("DHHS") administers the federal Medicare program through the Health Care Financing Administration ("HCFA"). On June 13, 1996, Parkview received a notice sent to all region V contractors regarding the "current HCFA enforcement policy with respect to provider and supplier billing options in Medicare secondary payer to liability insurance situations." (R. 68).

Subsequently, Roese was injured in an automobile accident on November 2, 1998. Her injuries were treated at Parkview, and she was charged for services through March 31, 1999. At the time of her hospitalization, Roese was over 65–years–of–age and eligible for Medicare coverage. Parkview charged Roese $56,457.08 for the services rendered. Further, at no time did Parkview seek payment under Medicare.

On April 15, 1999, Parkview, pursuant to Indiana Code § 32–8–26–4(a)(6), gave notice and timely filed a lien against Roese, Stephanie Longbrake, the alleged tortfeasor, and her insurance carrier, Allstate Insurance ("Allstate"), for the amount charged. On October 1, 1999, Roese, through her attorney Robert Thompson ("Thompson"), sent a letter to Parkview requesting that her bill be submitted to Medicare "and, to the extent not paid by Medicare, to Mrs. Roese's supplemental insurance." (R. 18). On November 11, 1999, Allstate paid $100,000 on behalf of its insured to Roese for her injuries sustained in the accident. The payment was made with two checks. One of the checks was made payable to the order of Roese, Thompson, and Parkview in the amount of the lien. This check has not been negotiated and is the subject of this appeal.

On November 17, 1999, Roese filed a motion to quash Parkview's lien. Roese alleged that, despite her requests, Parkview failed to submit the amount owed to Medicare. The trial court held an unrecorded hearing on June 30, 2000. On August 15, 2000, the trial court issued a general judgment without findings of fact and conclusions of law granting Roese's motion. The trial court also granted Parkview's motion for a stay of execution while this appeal is pending.

## DECISION

Parkview argues that the trial court erroneously granted Roese's motion to quash. Specifically, Parkview argues that federal Medicare statutes and regulations prevent it from pursuing payment from Medicare when automobile liability insurance is available. Roese argues that Indiana's Hospital Lien Statute requires Parkview to make all reasonable efforts to collect from medical insurance proceeds before "the establishment of a valid hospital lien . . . ." Roese's Brief at 7. Roese also argues that federal statutes and regulations do not prevent Parkview from collecting payment from Medicare.

■ "Our standard of review for the interpretation of statutes is *de novo*. We review legal determinations to ascertain whether the trial court erred in application of the law." *Clark v. Madden,* 725 N.E.2d 100, 104 (Ind.Ct.App.2000). "When a statute is clear and unambiguous on its face, we may not interpret the statute. Rather, words are to be given their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown by the statute itself. Additionally, language employed in a statute is deemed to have been used intentionally." *Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 215 (Ind.Ct.App.1999) *trans. denied.* (citations omitted).

■ Indiana Code § 32–8–26–3(a) gives a hospital "a lien for all reasonable and necessary charges for hospital care, treat-

ment, or maintenance of a patient" if the injuries giving rise to the claim required the hospital care. "The underlying purpose of the Hospital Lien Statute is to 'insure that hospitals are compensated for their services.'" *Community Hosp. v. Carlisle,* 648 N.E.2d 363, 365 (Ind.Ct.App. 1995) (quoting *National Ins. Association v. Parkview Memorial Hospital,* 590 N.E.2d 1141, 1144 (Ind.Ct.App.1992)).

The lien's priority and the steps necessary to maintain perfection are described as follows: (1) it applies to any amount recovered by the patient through a settlement; (2) it is subordinate to an attorney's lien; (3) it does not apply to worker's compensation accidents or injuries; and (4) it is not assignable. Ind.Code § 32–8–26–3(b). Ending the same subsection, the statute requires that

> [t]he lien ... must be reduced by the amount of any medical insurance proceeds paid to the hospital on behalf of the patient after the hospital has made all reasonable efforts to pursue the insurance claims in cooperation with the patient.

I.C. § 32–8–26–3(b)(5).

Roese argues that I.C. § 32–8–26–3(b)(5) establishes "a requirement for, or a condition precedent to, the establishment of a valid hospital lien, and ... render[s] invalid any lien claimed in circumstances where a hospital has failed or refused to pursue available insurance coverage, or has failed to reduce the amount of the lien by the amount of any insurance proceeds received." (Roese's Brief at 7).

■ Indiana Code § 32–8–26–3 is clear and unambiguous. Subsection (b) describes the priority and necessary steps to maintain perfection of the lien. For example, subsection (b)(5) requires that a hospital's lien be reduced by the amount it receives from insurance proceeds "after the hospital has made all reasonable ef-

forts to pursue the insurance claims in cooperation with the patient." *Id.* This subsection imposes a duty upon the hospital to also seek reimbursement for medical services from the patient's medical insurer if the lien's perfection is to be maintained. The unpaid portion can then be secured through a lien, insuring "that hospitals are compensated for their services." *Community Hosp.,* 648 N.E.2d at 365.

However, federal legislation or regulations may affect whether a hospital can submit a claim to Medicare before pursuing payment from another source. If so, the existence of Medicare may preempt the Hospital Lien Statute.

> The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Louisiana Public Service Com'n v. F.C.C.,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986).

■ On August 14, 1935, Congress passed the Social Security Act, and it was subsequently amended in 1965. Social Security Amendments of 1965, Pub. L. No. 89–97, 79 Stat. 286 (1965). These amendments created an entitlement to hospital insurance benefits for those over 65 years

of age; the purpose was to "insure the availability of adequate medical care for the aged." *Lord v. Richardson,* 356 F.Supp. 232, 235 (S.D.Ind.1972).

"Originally, medicare was a primary payer because the private health insurance industry made its coverage secondary to medicare's." Michael A. de Freitas, Annotation, *Validity, Construction, and Application of Medicare Secondary Payer Provisions of Social Security Act (42 USCS § 13[9]5y(b)) and Regulations Promulgated Thereunder,* 126 A.L.R. FED. 553 (1995). However, the 1965 amendments also contained a section excluding certain expenses from coverage. Social Security Amendments of 1965 § 1892 (codified as amended at 42 U.S.C. § 1395y). Within this section, Congress added a series of amendments making Medicare a secondary payer under certain circumstances. 126 A.L.R. FED. 553. In other words, medical service providers were no longer able to seek reimbursement from Medicare if another source was available.

Additional, relevant amendments were enacted during the 1980s. During this period, Congress specifically made Medicare a secondary payer to automobile or liability insurance plans. Omnibus Reconciliation Act of 1980, Pub.L. No. 96–499, 94 Stat. 2647 (1980). Additional amendments were also enacted in 1987 and 1989. *See* Omnibus Reconciliation Act of 1987, Pub.L. No. 100–203, 101 Stat. 1379 (1987); Omnibus Reconciliation Act of 1989, Pub.L. No. 101–239, 103 Stat. 2231 (1989) (codified as amended at 42 U.S.C. § 1395y(b)(2)(A)(ii)). In its present form, the relevant subsection reads as follows:

(A) In general

Payment under this subchapter may not be made, except as provided in subpara-

graph (B), with respect to any item or service to the extent that—

\*\*\*\*\*

(ii) payment has been made or can reasonably be expected to be made *promptly* (as determined in accordance with regulations) under a workmen's compensation law or plan of the United States or a State or an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

*Id.* (emphasis added). "The intent of this statute was to cut the costs of the Medicare program by requiring that Medicare pay 'secondary' to alternate sources." *U.S. v. Travelers Insurance Co.,* 815 F.Supp. 521, 522 (D.Conn.1992).

As required by the statute, the DHHS has defined "promptly" as follows:

*Prompt* or *promptly,* when used in connection with payment by a liability insurer means payment within 120 days after the earlier of the following:

(1) The date a claim is filed with an insurer or a lien is filed against a potential liability settlement.

(2) The date the service was furnished or, in the case of inpatient hospital services, the date of discharge.

42 C.F.R. § 411.50(b) (2000). In addition, the DHHS has promulgated a regulation limiting charges a medical service provider can impose against a patient's insurance settlement or claim. That regulation reads as follows:

(2) Specific limitations. Except as provided in paragraph (d)[1] of this section, the provider or supplier—

---

**1.** Subparagraph (d) applies to nonparticipating suppliers who also have not accepted assignment for services rendered or have not claimed payment after a beneficiary has died. Because Parkview is a participating service provider, this regulation applies.

(i) May not bill the liability insurer nor place a lien against the beneficiary's liability insurance settlement for Medicare covered services.

(ii) May only bill Medicare for Medicare-covered services; and

(iii) May bill the beneficiary only for applicable Medicare deductible and co-insurance amounts plus the amount of any charges that may be made to a beneficiary under § 413.35 of this chapter (when cost limits are applied to the services) or under § 489.32 of this chapter (when services are partially covered).

42 C.F.R. § 411.54(c)(2) (2000). In the end, we are left with two conflicting regulations: the first allowing service providers to collect from an automobile or liability insurance plan, and the other prohibiting the billing or filing of a lien against a liability insurance settlement.

■■■ To resolve this conflict we review the Department of Health and Human Service's construction of the statute. "Generally, when reviewing an agency's construction of a statute administered by that agency, we first determine "whether Congress has directly spoken to the precise issue." *U.S. v. Alaska*, 503 U.S. 569, 574, 112 S.Ct. 1606, 1610, 118 L.Ed.2d 222 (1992). If Congress's intent is clear, "that is the end of the matter: for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Further, we grant agencies considerable deference when construing complex statutes that " 'depend upon more than ordinary knowledge respecting the matters subjected to agency regulations.' " *Id.* at 844. " 'This is espe-

cially true when an agency's own regulation is involved, and ordinarily its construction will be affirmed if it is not clearly erroneous or inconsistent with the regulation. [However, even] though the Medicare reimbursement area is complex, and to a great degree left to the [DHHS] to structure, ... [its] interpretations are nonetheless subject to our examination.' " *Indiana Hospital Association, Inc. v. Schweiker*, 544 F.Supp. 1167, 1178 (S.D.Ind.1982) (quoting *Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123, 130–31 (9th Cir.1980)). For example, if the regulation conflicts with the authorizing statute or its underlying policies, we will no longer defer to the agency's opinion. *Id.*

In this case, we find that Congress's intent is clearly expressed in 42 U.S.C. § 1395y(b)(2)(A)(ii). It explicitly prohibits medical service providers from collecting payment from Medicare when payment can reasonably be expected to be made promptly under an automobile or liability insurance policy. As we mentioned, Congress wanted to reduce the cost of the Medicare program by making Medicare a secondary payer. *Travelers*, 815 F.Supp. 521. When Medicare was first made a secondary payer to automobile and liability insurance in 1980, the DHHS found that "[d]espite regulation and instructions, implementation [had] fallen short of expectations." Medicare as Secondary Payer and Medicare Recovery Against Third Parties, 54 Fed. Reg. 41,716 (October 11, 1989). The DHHS discovered that up to "90 percent of all working aged claims were billed to Medicare rather than the other insurer because" hospitals did not have procedures in place to identify those insurers. *Id.* As a result, Medicare was paying more than the statutory scheme required, and Congress and the DHHS sought to recover those "mistaken payments" through subse-

quent amendments and the aforementioned regulations. *Id.* Therefore, because Congress's intent was clear and the interpretation and administration of the Medicare statutes and regulations requires substantial expertise, we defer to the DHHS regulations governing secondary payer status to automobile and liability insurance settlements.

 We now turn our attention to 42 C.F.R. §§ 411.50 and 411.54(c)(2), the conflicting regulations. At the hearing, Parkview submitted a letter issued by the HFCA addressing Medicare's secondary payer status to liability insurance. The relevant portion reads as follows:

HCFA's current enforcement policy is that where a provider/supplier has reason to believe that it provided services to a Medicare beneficiary for which payment under liability insurance may be available, the provider/supplier:

— Within the 120 day "promptly" period, *must* bill only the liability insurer, unless it has evidence that the liability insurer will not pay within the 120 day promptly period. If it has such evidence, it may bill Medicare for conditional payment, provided it supplies documentation to support the fact that payment will not be made promptly.

— After the 120 day promptly period has ended, may, but is not required, to bill Medicare for conditional payment if the liability insurance claim is not finally resolved.

• If it chooses to bill Medicare, it must withdraw claims against the liability insurer or a lien placed on the beneficiary's settlement.

• If it chooses to continue its claim against the liability insurance settlement, it may not also bill Medicare.

This policy applies nationwide (including Oregon). HCFA expects to issue an

interim final regulation with comment period (IFC) that will revise 42 CFR 411.54 to conform to this policy. In the interim period before issuance of final regulations following analysis of the comments of the IFC. HCFA does not intend to terminate the agreements of providers because they are pursuing a claim against a liability insurer whom they believe to be the primary payer under Medicare law, so long as the billing conforms to this policy.

(R. 68–69) (emphasis added). We find the DHHS's interpretation of the regulations resolves the conflict. The interpretation explicitly addresses the conflict and states that amended final regulations will be issued. Further, this interpretation is consistent with Congress's intent to make Medicare a secondary payer to liability insurance. Therefore, we hold that because these regulations are in conflict with Indiana's Hospital Lien Statute, the statute—which requires hospitals to first make all reasonable efforts to secure payment from medical insurance to maintain a perfected lien—is preempted if the medical insurance in question is Medicare. *See* I.C. § 32–8–26–3(b)(5).

Our holding is supported by an opinion of the Alabama Supreme Court in *Joiner v. Medical Center East, Inc.,* 709 So.2d 1209 (Ala.1998). In that case, Frank Joiner and his wife ("the Joiners") were involved in an automobile accident. He received medical treatment from a hospital and was eligible for Medicare coverage. The Joiner's medical costs were $14,778.76. Instead of requesting payment from Medicare, the hospital chose to file a lien to secure payment from the proceeds of any insurance settlement. Subsequently, the Joiner's received a $50,000 settlement from the other driver's liability insurer after the 120–day promptly period, and they demanded that the hospital file for

payment from Medicare and withdraw its lien. When the hospital refused, the Joiner's filed a complaint against the hospital. The trial court granted summary judgment in favor of the hospital finding that it had a right to receive payment from the settlement.

On appeal, the Joiner's argued that because there was no settlement until after the 120–day promptly period, the hospital was obligated by federal law to file for payment from Medicare. However, the Alabama Supreme Court, deferring to Department of Health and Human Services regulations, disagreed. The court, referring to the same interpretation letter we rely on, concluded that the hospital "had the right under federal law to obtain full payment of its charges from the proceeds of Frank Joiner's settlement, even though that settlement was reached more than 120 days after the discharge from the hospital." *Id.* at 1221.

 In this case, we find that Parkview initially did not comply with the DHHS interpretation letter. The DHHS required Parkview to bill only Allstate "within 120 days after ... the date the service was furnished...." 42 C.F.R. § 411.50(b). Those dates were from March 31, 1999 until July 28, 1999. The interpretation's mandatory language is clear; "Within the 120 day 'promptly' period, [Parkview] *must* bill only the liability insurer,...." (R. 68). Despite having received the DHHS's interpretation letter more than two years prior, Parkview chose to file a lien against Roese within the 120 day promptly period on April 15, 1999. However, once the July 28, 1999 deadline expired, the DHHS interpretation gave Parkview a choice: (1) it could have filed for conditional payment from Medicare if an insurance settlement had not been finalized and waived its lien against Roese; or (2) it could have pursued "its claim against the liability insurance settlement" and waived Medicare reimbursement. (R. 68). Parkview chose the latter and filed its lien against Roese, giving notice to Allstate. Parkview's actions after July 28, 1999 were consistent with the DHHS regulations governing Medicare as a secondary payer to automobile and liability insurance.

Therefore, we find the trial court erred in granting Roese's motion to quash. The trial court's interpretation of Indiana's Hospital Lien Statute conflicts with Medicare statutes and regulations by making Medicare a primary payer.

Reversed.

RILEY and ROBB, JJ., concur.