**Doris CHEATHAM, Appellant,**

v.

**Michael POHLE, Appellee.**

No. 40A01–0010–CV–329.

Court of Appeals of Indiana.

Feb. 28, 2002.

---

Thomas J. Lantz, David W. Paugh, Montgomery, Elsner & Pardieck, Seymour, IN, Attorneys for Appellant.

Andrew M. Auersch, Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorneys for Appellee.

David W. Stone IV, Anderson, IN, Attorney for Amicus Curiae.

Steve Carter, Attorney General of Indiana, David L. Steiner, James B. Martin, Deputy Attorneys General, Indianapolis, IN, Attorneys for Amicus Curiae.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

■ In March 1998, Doris Cheatham filed a complaint against her former husband, Michael Pohle, alleging that he had invaded her privacy and intentionally caused her severe emotional distress when he posted several nude photographs of her in public places. In his amended answer, Pohle asserted the defense of waiver, and Cheatham moved for partial summary judgment on that issue. Following a hearing, the trial court entered partial summary judgment for Cheatham, ruling that, as a matter of law, Pohle could not assert waiver as a defense. At Pohle's request, the trial court certified its order for interlocutory appeal. In February 2000, we affirmed the trial court's grant of partial summary judgment in favor of Cheatham. *See Pohle v. Cheatham,* 724 N.E.2d 655 (Ind.Ct.App.2000). On remand, a jury found in favor of Cheatham and awarded her compensatory damages of $100,000 and punitive damages of $100,000. The trial court entered judgment on the verdicts. Cheatham appeals,[1] but she does

---

1. Pohle cross-appeals and raises the following two issues for our review: (1) whether Indiana recognizes the tort of Public Disclosure of Private Facts, and (2) whether the trial court erred by allowing the jury to return a punitive damages award without requiring it to consider Pohle's financial condition. Pohle, however, has waived these arguments. With respect to both issues, Pohle failed to raise his concerns during trial. Pohle could have moved for summary judgment or judgment on the evidence, objected to the trial court's jury instructions on these issues, or tendered his own instructions. He did none of these. Pohle filed a motion to correct

error pursuant to Trial Rule 59(A)(2) in which he challenged the jury verdict as excessive and requested a new trial. In his motion, Pohle neither alleged that Cheatham had failed to state a claim nor that he was moving for judgment on the evidence under Trial Rule 50(A)(4). It is well settled that a party may not advance a theory on appeal that was not originally raised to the trial court, *Van Meter v. Zimmer,* 697 N.E.2d 1281, 1283 (Ind. Ct.App.1998), and that the failure to raise errors that existed at trial may not be remedied in a post-trial motion to correct errors or on appeal. *Walker v. McCrea,* 725 N.E.2d

not attack the judgment. Rather, she raises the following issues concerning the allocation of her damage award:

1. Whether the State's appropriation of 75% of a punitive damage award violates the takings clauses of the United States and Indiana Constitutions.

2. Whether Indiana Code Section 34–51–3–6 violates Article 1, Section 21 of the Indiana Constitution because it makes an unconstitutional demand upon an attorney's particular services.[2]

We affirm the judgment and hold that Indiana Code Section 34–51–3–6 violates the particular services clause of the Indiana Constitution.[3]

## FACTS AND PROCEDURAL HISTORY

In this court's opinion in *Cheatham I* we provided a lengthy recitation of the facts surrounding this case. They are, in part, as follows:

[O]n October 13, 1977, Pohle and Cheatham were married. A daughter, K.P., was born to the marriage on September 12, 1979. In May 1993, the couple became estranged. However, sometime in late September or early October 1993, during this estrangement, Cheatham and Pohle engaged in sexual relations at Pohle's home. During this visit, in which Cheatham had hopes of reconciliation, she voluntarily posed for Pohle to take Polaroid photographs of her both clothed, in a state of nudity and performing a sex act. At no time during or after these pictures were taken did

Cheatham ask what Pohle intended to do with the pictures or attempt to recover them.

Thereafter, on December 29, 1994, the parties' marriage was dissolved. According to a catchall provision in the court-approved property settlement, each party was awarded any miscellaneous personal property in their [sic] respective possession. Thus, as the pictures remained in Pohle's possession, they were tacitly awarded to him in the dissolution decree.

\*　　\*　　\*

On February 28 or March 1, 1998, Pohle made photocopies of the nude pictures taken years earlier. Each photocopy included several photos of Doris in various sexually explicit poses. Pohle also included on these photocopies [unflattering] handwritten notations [about Cheatham].

\*　　\*　　\*

After placing the individual photocopies in plastic baggies to protect them from the weather, he then posted and scattered them around several locations throughout Jennings County, including businesses in North Vernon.... Moreover, Pohle dispersed several dozen of the photocopies throughout Cheatham's neighborhood and her church....

As a result of the publication of these photographs, Cheatham filed a complaint against Pohle on March 27, 1998, alleging intentional invasion of privacy

---

526, 532 (Ind.Ct.App.2000). We therefore decline to address these arguments on appeal.

2. Cheatham also argues that the State's failure to pay attorney's fees from its 75% share of any punitive damage award imposes an unconstitutional tax upon those attorneys who win punitive damages, in violation of Article

10, Section 1 of the Indiana Constitution. However, since we conclude that the statute is unconstitutional on other grounds, we need not address this remaining argument.

3. We heard oral argument on November 29, 2001.

and intentional infliction of severe emotional distress.

*Cheatham I,* 724 N.E.2d at 657.

## DISCUSSION AND DECISION

### Standard of Review

We note initially that Cheatham did not raise the constitutionality of Indiana Code Section 34–51–3–6 to the trial court. However, a party may raise the constitutionality of a statute at any stage of the proceeding, and this court may even raise the issue sua sponte. *Morse v. State,* 593 N.E.2d 194, 197 (Ind. 1992). Our usual standard of review for the interpretation of statutes is de novo. *Parkview Hospital, Inc. v. Roese,* 750 N.E.2d 384, 386 (Ind.Ct.App.2001). But when a statute is challenged as an alleged violation of the Indiana Constitution, it stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing. *Eukers v. State,* 728 N.E.2d 219, 221 (Ind.Ct.App. 2000). The party challenging the constitutionality of the statute bears the burden of proof, and we resolve all doubts against that party. *Id.* If there are two reasonable interpretations of a statute, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless such is required by the unambiguous language of the statute. *Id.*

### Takings Clause

The statute that permits the State to take 75% of Cheatham's punitive damage award, Indiana Code Section 34–51–3–6, provides, in pertinent part:

(a) ... [W]hen a judgment that includes a punitive damage award is entered in a civil action, the party against whom the judgment was entered shall pay the punitive damage award to the clerk of the court where the action is pending.

(b) Upon receiving the payment ... the clerk of the court shall:

(1) pay the person to whom punitive damages were awarded twenty-five (25%) of the punitive damage award; and

(2) pay the remaining seventy-five percent (75%) of the punitive damage award to the treasurer of state, who shall deposit the funds into the violent crime victims compensation fund....

Cheatham contends that the State's enforcement of its right under Indiana Code Section 34–51–3–6 to collect 75% of her punitive damages award is an unconstitutional taking under the Fourteenth Amendment of the United States Constitution and Article 1, Section 21 of the Indiana Constitution. We cannot agree.

The United States Supreme Court, in *McCullough v. Virginia,* 172 U.S. 102, 123–24, 19 S.Ct. 134, 43 L.Ed. 382 (1898), stated that:

It is not within the power of the legislature to take away rights [that] have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.

That case, however, addressed the effect on an existing judgment when the State later repealed the statute under which the judgment had been obtained. We have no such scenario here, as Indiana Code Section 34–51–3–6 was originally enacted in 1995 (formerly I.C. § 34–4–34–6), and Cheatham did not file her complaint until 1998. Thus, the statute was in full force and effect from the inception of Cheatham's case, and she was charged with

knowledge of its potential impact on her case.

In further support of her "takings" claim, Cheatham cites *Kirk v. Denver Publ'g Co.*, 818 P.2d 262 (Colo.1991). There, the Colorado Supreme Court held that a state statute requiring judgment creditors to forfeit one-third of their punitive damages to the State's general fund was a "taking" of property without just compensation in violation of the United States and Colorado Constitutions. *Id.* at 272. The court concluded that the judgment creditor does have a property interest in a punitive damage award and noted that: "[t]he legislature may well abate or diminish a pending civil action, but when that claim ripens into judgment 'the power of the legislature to disturb the rights created thereby ceases.'" *Id.* (quoting *McCullough*, 172 U.S. at 123–24, 19 S.Ct. 134). As we have already noted, we do not believe that *McCullough* holds that judgment creditors always have a property interest in punitive damage awards. And we do not agree with the *Kirk* court's interpretation on that point. We also note that, to our knowledge, *Kirk* is the only state supreme court decision to strike down a punitive damage allocation statute as an unconstitutional taking. *See* 32 Val. U.L.Rev. at 947. Subsequent courts in different states have found no vested property right in punitive damage awards. *Id.; see State v. Moseley*, 436 S.E.2d 632, 634 (Ga.1993).

 Moreover, it is well settled law in Indiana that there is no entitlement to punitive damages. *Durham ex rel. Estate of Wade v. U–Haul Int'l*, 745 N.E.2d 755,

764 (Ind.2001). The State could choose to eliminate punitive damages entirely. It is axiomatic that "individuals have 'no vested or property right in any rule of common law,'" and that "the General Assembly can make substantial changes to the existing law without infringing on citizen rights." *McIntosh v. Melroe Co., a Div. Of Clark Equip. Co., Inc.*, 729 N.E.2d 972, 978 (Ind. 2000). That being the case, we decline to hold that the State's appropriation of a portion of a judgment creditor's punitive damages is an unconstitutional "taking."

### Particular Services Clause

 Cheatham next contends that, on its face, Indiana Code Section 34–51–3–6 violates Article 1, Section 21 of the Indiana Constitution. Specifically, she argues that the State's right to collect 75% of her punitive damage award, without a corresponding obligation to pay any attorney's fees, unconstitutionally demands the services of her attorney without just compensation.[4] We agree.

Cheatham maintains that this statute conflicts with Article 1, Section 21 of our state constitution, which provides, in pertinent part, that: *"No person's particular services shall be demanded, without just compensation...."* (Emphasis added).

 To our knowledge, neither this court nor our supreme court has previously addressed whether that statute violates the "particular services" clause of our state constitution. However, the standard Cheatham must meet to prevail on her claim under the particular services clause is well settled. Cheatham must meet the

---

4. Although not addressed by the parties, we note that Cheatham has standing to challenge the State's non-payment of her attorney's fees. She is the "true owner" of the right to collect the judgment and attorney's fees. *See Valparaiso Technical Inst., Inc. v. Porter County Treasurer*, 682 N.E.2d 819, 821 (Ind.Ct.App.

1997). An attorney's entitlement to reasonable attorney's fees is indirect and derivative of the client's statutory right to recover those fees. *See id.* An attorney has no claim to a fee award independent of the client, and the attorney cannot litigate the award separate and apart from the client. *See id.*

test described in *Bayh v. Sonnenburg*, 573 N.E.2d 398 (Ind.1991), *cert. denied.* That test requires a party to show that he (1) performed particular services, (2) on the State's demand, (3) without just compensation. *Id.* at 411; *Gorka v. Sullivan*, 671 N.E.2d 122, 130 (Ind.Ct.App.1996).

### Particular Services

In *Sonnenburg*, our supreme court established the following two-pronged method for determining whether services are "particular" within the meaning of Article 1, Section 21: (1) whether the services had been historically compensated; and (2) whether the service was something required of a party as an individual, in contradistinction to what is required, generally, of all citizens. *Sonnenburg*, 573 N.E.2d at 413–14. Our own analysis leads us to conclude that historically attorneys have received compensation for their professional services. And, it can hardly be argued that particularized legal expertise is generally required of all citizens. However, we need not rely entirely on our own judgment, as our supreme court has previously addressed these issues in its analysis of Indiana's particular services clause:

> It is clear that the framers did not intend this clause to create new rights to compensation for services provided to the State that had gone historically uncompensated. This Court's decisions addressing the "particular services" clause follow the principles found in the debates. In *Israel v. State*, [8 Ind. 467 (1856)], this Court refused to require the State to pay fees to witnesses in criminal trials. Declining to further define the meaning of "particular services," the Court followed history. "The old constitution contained a like provision, but we believe it never was understood to extend to witnesses in criminal trials, and the provision in the new constitution should not be so understood."

> In *Blythe v. State*, [4 Ind. 525 (1853)], this Court reversed a finding of contempt against an attorney who refused to provide uncompensated legal services for a poor person charged with a crime. This holding was repeated in *Webb v. Baird*, [6 Ind. 13 (1854)], [where] the Court noted that because attorneys no longer enjoy any special privileges or pecuniary emoluments under the law, "the public can no longer justly demand of that class of citizens any gratuitous services which would not be demandable of every other class." ... The court concluded that an attorney's legal services constitute his means of livelihood and are "no more at the mercy of the public, as to remuneration, than are the goods of the merchant, or the crops of the farmer, or the wares of the mechanic."

*Sonnenburg*, 573 N.E.2d at 413–14. (Citations and footnotes omitted).

Thus, at least since 1853, our supreme court has recognized that attorneys have a right to be compensated for services different from those that are required of ordinary citizens. Recently, in *Sholes v. Sholes*, 760 N.E.2d 156, 162 (Ind.2001), the court reaffirmed that longstanding principle. The court found "no support for the proposition that attorneys' services were historically viewed as somehow outside the ban on conscripting 'particular services'" and reiterated that an attorney's services may not be demanded without just compensation. *Id.* We conclude, and it is well settled, that attorneys perform "particular services" within the meaning of Article 1, Section 21.

### State Demanded Services

We turn next to the question of whether Cheatham's attorney performed legal services "on demand" from the State. The essence of a demand, as opposed to a

mere request, for one's services encompasses "the use or threatened use of physical force or legal process which creates in the citizen a reasonable belief that he is not free to refuse the request." *Sonnenburg*, 573 N.E.2d at 417; *Gorka*, 671 N.E.2d at 130. Here, there is no perceived threat of physical force (unlike in *Sonnenburg*, where hospital patients felt they would be punished if they refused to work); however, by enacting Indiana Code Section 34-51-3-6, the State effectively compels all attorneys who win punitive damages for their clients to forfeit their right to collect fees from 75% of that award. In economic terms, this statute allows the state to become a "free rider" on the legal services of those attorneys who win punitive damages. *See* HENRY N. BUTLER, ECONOMIC ANALYSIS FOR LAWYERS, Chapter X § 4(b) (1998) (discussing the term "free rider").

In *Gorka*, this court considered a letter from the State advising a health services provider that its decision to reject a state-offered contract might violate the Motor Carrier Act. *See Gorka*, 671 N.E.2d at 131. We concluded that the letter did not constitute "threatened legal process." *Id.* We do not interpret *Gorka*, however, to mean that letter writing, verbal threatening, or other "strong-arming" tactics are the only means by which the State may threaten legal process. *See Gorka*, 671 N.E.2d at 131. The most obvious method by which a State may threaten, coerce, or force a party to comply with its wishes is to demand that compliance through legislation. While the State has the right to enact legislation, that right obviously does not bestow upon it the power to make unconstitutional demands upon its citizens.

Indiana Code Section 34-51-3-6 requires the party against whom punitive damages are assessed to pay 100% of that award to the clerk of the court. The clerk then pays 75% of the award to the state treasurer and the remaining 25% to the prevailing party. While the statute provides no specific method for the State to collect its share if the parties do not comply with this scheme, the State is not without a remedy. There is no doubt that under this statute the State may collect its 75% statutory share of the punitive damage award through legal process. In other words, this statute presents a threat of legal process against all attorneys who fail to surrender to the State their right to collect fees and costs from 75% of a punitive damage award.

Viewed from a slightly different perspective, the statute operates as a "contract" from which an attorney may not withdraw. As one commentator has noted:

> The attorney who refuses to argue for punitive damages is under no threat, but the attorney has no option to cancel the "contract" with the State in the event punitive damages are argued and awarded. The "contract" operates by law, providing, as the court in *Sonnenburg* said, "the use, or threatened use of . . . legal process which creates in the citizen a reasonable belief that he is not free to refuse the request."

Charles F.G. Parkinson, *A Shift in the Windfall: An Analysis of Indiana's Punitive Damages Allocation Statute and the Recovery of Attorney's Fees Under the Particular Services Clause*, 32 Val. U.L.Rev. 923, 964–65 (1998) (citation omitted). Accordingly, we conclude that Cheatham's attorney provided legal services "on demand from the State."

### Just Compensation

The third and final prong of the *Sonnenburg* analysis requires us to decide whether Indiana Code Section 34-51-3-6 withholds just compensation from those attorneys who win punitive damages for

their clients. As we have already noted, our courts have long held that an attorney's services cannot be demanded without just compensation. *Blythe*, 4 Ind. at 525; *see Webb*, 6 Ind. at 15–17;[5] *see also Sholes*, 760 N.E.2d at 162–64. Here, Indiana Code Section 34–51–3–6 does not require the State to pay the prevailing party's counsel any fees or to reimburse counsel for litigation costs and expenses. In its amicus brief, the State contends that attorneys in civil actions such as this are "free to charge their clients anything acceptable under prevailing standards, subject to the client's willingness to pay. Moreover, 25[%] of the punitive damages remain[ ] a source to satisfy the attorney's fees." Brief of State as Amicus Curiae at 10. That suggestion would produce a double whammy whereby the State not only confiscates 75% of the punitive damage award but also shifts the entire cost of obtaining the State's share to the prevailing party. But more importantly, this argument misses the constitutional point. The constitutional question is whether Indiana Code Section 34–51–3–6 allows the State to exploit an attorney's particular legal services without paying for them, not whether an attorney might conceivably fashion a fee agreement that compensates

him for that portion of the award from which he is unable to collect fees.

The State also seems to suggest that because Cheatham's attorney "willingly under[took]" to represent Cheatham, that he cannot now claim that Indiana Code Section 34–51–3–6 is unconstitutional. Brief of State as Amicus Curiae at 9. That argument is equally unavailing.[6] If any attorney, through his client, were to challenge the constitutionality of this statute, the statute would first have to have been an issue in the litigation. But, since neither the parties nor the attorneys can predict whether a judge or jury will award punitive damages until after the trial, neither an attorney nor a party can challenge this statute's constitutionality without first submitting to its authority and winning punitive damages. Absent a declaratory judgment action,[7] the constitutionality of this statute would not be an issue ripe for decision without an actual punitive damage award.

As drafted, the statute not only forces the winning party to surrender 75% of its award, but it prevents that party's attorney from recovering fees and costs from that portion of the award while allowing the State to benefit from successful

5. Interestingly, the *Webb* court also concluded that a law that requires attorneys to gratuitously service clients imposes, in effect, an unconstitutional tax upon attorneys as a class. *See Webb*, 6 Ind. at 17. However, our supreme court later declared that the equal rate of assessment provision in Article 10, Section 1 applies only to "property taxes under a general levy." *Miles v. Dep't of Treasury*, 209 Ind. 172, 199 N.E. 372, 374 (1935). Thus, *Webb* does not control this issue.

6. At oral argument, while discussing whether this statute justly compensates attorneys for their services, counsel for the Attorney General suggested that winning punitive damages is not much more difficult than winning actual damages. We take exception to that broad

assertion. The usual civil standard of proof is by a "preponderance of the evidence." But to win punitive damages, the attorney "must establish, by *clear and convincing evidence*, all of the facts that are relied upon by that person to support the recovery of punitive damages." Ind.Code § 34–51–3–2 (emphasis added). The "clear and convincing evidence" standard, while not as onerous as the criminal realm's "beyond a reasonable doubt," is considerably higher than the "preponderance of the evidence" standard. *See In re A.M.H.*, 732 N.E.2d 1284, 1286 (Ind.Ct.App.2000). Generally, as both a legal and practical matter, more work is required to prove punitive damages than actual damages.

7. *See* Ind.Code § 34–14–1–2.

legal representation without having to pay any remuneration or expenses.[8] The State is riding in the attorney's pockets. Constitutionally speaking, "no compensation" cannot be considered "just compensation" for an attorney's services. To interpret the particular services clause of our constitution otherwise would render that provision meaningless.

## CONCLUSION

In sum, we conclude that Indiana Code Section 34–51–3–6 does not constitute an unconstitutional taking by allowing the State to appropriate 75% of a punitive damages award. But we also conclude that, since the statute does not require the State to compensate the attorney for the prevailing party, it requires attorneys who win a punitive damage award to perform particular services without just compensation on demand from the State. No other reasonable interpretation of the statute renders it constitutional in this respect. Accordingly, we affirm the judgment and hold that Indiana Code Section 34–51–3–6 violates Article 1, Section 21 of the Indiana

Constitution and is void on its face as a matter of law to the extent that it requires attorneys to perform, upon demand from the State, particular services without just compensation.

SHARPNACK and RILEY, JJ., concur.

---

**8.** Indiana Code Section 34–51–3–6 has obvious, practical deficiencies besides the constitutional one that we address. In particular, the statute is silent on what happens in the event of post-judgment settlement. Is the State entitled to 75% of the original judgment, the settlement amount, or none at all if the parties bargain for a release of the judgment? In addition, if a defendant cannot pay both the compensatory and punitive damages in one lump sum, but pays, for example, $20,000, does that payment count toward the compensatory award, the punitive award, or both? Is the State entitled to a pro rata share of any payments by a defendant or must it wait until the defendant has paid in full to collect its 75%?

Moreover, the statute as written presents an interesting ethical dilemma for attorneys. If the State is not required to pay the prevailing party's attorney's fees, as it relates to the State's share of the punitive damages award, what incentive do attorneys have to then seek such damages for their clients, even in cases where punitive damages might be warranted? Might attorneys choose to not expend the time and effort to seek punitive damages if they know they will receive no compensation (or very little) for doing so? Might attorneys also try to "take advantage" of clients in the fee provisions of their service contracts? Indiana's statute, unlike similar ones in Missouri, Illinois, Georgia, Iowa, Utah, and Oregon, does not define from which portion an attorney's fee may be taken. *See* Mo. Ann. Stat. § 537.675; 735 ILCS 5/2–1207; Ga. Code Ann. § 51–12–5.1(e)(2); Iowa Code Ann. § 668A.1(2)(b); Utah Code Ann. § 78–18–1(3); Or.Rev.Stat. § 18.540(1)(a). While the attorney and client may agree that the fee will be taken from the total judgment, fee contracts might additionally specify that the attorney can receive compensation based on the total amount, including that amount awarded to the State, regardless of the amount the plaintiff actually receives. *See* 32 Val. U.L.Rev. at 966.