COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-228-CV

 

 

LARRY DEAN SPEEGLE                                                         APPELLANT

 

                                                   V.

 

HARRIS METHODIST HEALTH 

SYSTEM AND
HARRIS                                                          APPELLEES

METHODIST FORT WORTH

 

                                              ------------

 

           FROM
THE 141ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                OPINION ON REHEARING

 

                                              ------------

We
withdraw our opinion and judgment of October 29, 2009, and substitute the
following.  We deny appellant=s Motion
for Rehearing.

I.    
Introduction








Appellant
Larry Dean Speegle brings this appeal complaining of the trial court=s
summary judgment establishing the validity and amount of a hospital lien filed
by appellees Harris Methodist Health System and Harris Methodist Fort Worth and
granting appellees recovery for the amount of the lien plus attorney=s
fees.  We affirm.

II.    
Background

On June
15, 2001, Larry Dean Speegle was involved in an automobile accident with
Santiago Guzman, an employee or agent of SpectraSite Construction, Inc.
(SpectraSite).  Speegle was care-flighted
to Harris Methodist Fort Worth (the Hospital) where he was admitted and treated
from June 15, 2001, to July 11, 2001. 
The Hospital=s total charges for this care
were $142,915.01.  On June 29, 2001,
Harris Methodist Health System and its subsidiary, the Hospital, filed a notice
of hospital lien for these services. 
Although Speegle is entitled to Medicare, the Hospital has not billed or
received payment from Medicare for this treatment.








On or
about August 11, 2004, Speegle and his wife entered into a Compromise
Settlement Agreement and Release (the Settlement Agreement) with Guzman and
WesTower Communications, Inc. (SpectraSite=s
successor).  The Settlement Agreement
provided that A$1,250,000.00[] . . . will be
paid to the Releasing Parties and medical lien holders as follows:  1. $391,064.43 to Larry Speelge [sic],
[the Hospital], Trailblazer Health Enterprises L.L.C. [a Medicare contractor]
and Kent, Good & Anderson, P.C.@  $391,064.43 is the exact total of appellees= lien
amount ($142,915.01) and Medicare=s lien
amount ($248,149.42).  In the Settlement
Agreement, the parties further agreed that Athe
total of these two liens is being paid as described in Paragraph IV. A. 1.
above with the intent that the liens of [the Hospital] and Medicare will
be satisfied with these funds (emphasis added).A

On
August 9, 2004, SpectraSite=s
insurer, Zurich American Insurance Co., issued to Speegle or his agent a check
made jointly payable to Speegle, the Hospital, Trailblazer Health Enterprises
(Medicare=s fiscal intermediary), and
Kent, Good & Anderson, Speegle=s
counsel, in the amount of $391,064.43. 
Speegle, however, did not pay the Hospital the $142,915.01 payment.[1]  Instead, on November 30, 2004, he filed an
original petition, seeking a declaration that the hospital lien is invalid
because appellees failed to comply with Chapter 146 of the Texas Civil Practice
and Remedies Code by not billing Medicare for Speegle=s
treatment.  Harris Methodist Health
System and the Hospital countersued, seeking a declaration that the lien was
valid, recovery of the amount of the lien under the Settlement Agreement, and
attorney=s fees.








Speegle
and appellees filed competing motions for traditional summary judgment on all
claims.  The trial court denied Speegle=s motion
and rendered an interlocutory summary judgment granting appellees= motion
on both counterclaims, fixing the amount of the hospital lien at $142,915.01,
and ordering Speegle to pay appellees that amount.

The
issue of the appellees= attorney=s fees
was tried to a jury.  Over Speegle=s
objection, the jury was not asked to segregate attorney=s fees
between appellees= two claims.  The jury returned a verdict awarding
appellees $50,512.50 in attorney=s fees
through trial plus attorney=s fees
on appeal.  The trial court rendered a
final judgment on March 4, 2008, and this appeal followed.

III.    
Standard of Review

In a
traditional summary judgment case, the issue on appeal is whether the movant
met the summary judgment burden by establishing that no genuine issue of
material fact exists and that the movant is entitled to judgment as a matter of
law.[2]  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.[3]  Summary judgment is proper when parties do
not dispute the relevant facts.[4]








When
reviewing a summary judgment, we take as true all evidence favorable to the nonmovant,
and we indulge every reasonable inference and resolve any doubts in the
nonmovant=s favor.[5]  Evidence that favors the movant=s
position will not be considered unless it is uncontroverted.[6]  But we must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
evidence presented.[7]

The
summary judgment will be affirmed only if the record establishes that the
movant has conclusively proved all essential elements of the movant=s cause
of action or defense as a matter of law.[8]  When both parties move for summary judgment
and the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary
judgment evidence and determine all questions presented.[9]








IV.     Validity of the Hospital Lien

In his
first issue, Speegle challenges the trial court=s order
granting appellees= summary judgment on their
hospital lien and breach of contract claims. 
Speegle contends that the lien is invalid because the Hospital was
required to timely bill and receive payment for its services from a third party
payer, Medicare, rather than create a lien under Chapter 55 of the Texas
Property Code.

To
secure the costs hospitals incur when treating accident victims, Chapter 55 of
the Texas Property Code generally grants hospitals a lien on any cause of
action a patient may have against a tortfeasor.[10]  Specifically, section 55.002(a) of the
property code provides:

A hospital has a lien on a cause of action or claim of an individual
who receives hospital services for injuries caused by an accident that is
attributed to the negligence of another person. 
For the lien to attach, the individual must be admitted to a hospital
not later than 72 hours after the accident.[11]








This
lien attaches to the plaintiff=s cause
of action, a judgment, or the proceeds of a settlement.[12]  Once the lien is filed, a tortfeasor cannot
obtain a release by judgment or settlement unless the hospital=s
charges are paid.[13]








Prior to
1980, federal law provided that AMedicare
was the primary payer for hospital and medical services received by its
beneficiaries.@[14]  In 1980, however, Congress enacted secondary
payer provisions that provided that Medicare is a secondary payer in certain
cases when a Medicare beneficiary is covered by other insurance.[15]  The purpose behind the secondary payer
provisions was to achieve major fiscal savings in the Medicare program.[16]  As stated in the House Report on the bill in
which the secondary payer provision was originally enacted, Congress intended
to reverse the policy then in effect that established Medicare as the primary
payer Aeven in
cases in which a beneficiary=s need
for services [was] related to an injury or illness sustained in an auto
accident and the services could have been paid for by a private insurance
carrier under the terms of an automobile insurance policy.@[17]

At the
time of Speegle=s treatment at the Hospital, the
relevant secondary payer statute, 42 U.S.C. ' 1395y(b)(2)(A),
provided in pertinent part:

Payment under this subchapter may not be made,
except as provided in subparagraph (B), with respect to any item or service to
the extent that --

 

. . . .

 

(ii) payment has been
made or can reasonably be expected to be made promptly (as determined in
accordance with regulations) under a . . . liability insurance policy or plan .
. . .[18]

 








This
statute expressly prohibits Medicare from paying if a liability carrier has
already paid or is reasonably expected to pay Apromptly.@  According to the regulations adopted by the
Health Care Financing Administration (HCFA), Apromptly@ is
defined as within 120 days of the earlier of the date a lien is filed against a
potential liability settlement or the date of discharge.[19]  Therefore, under federal statutory and
regulatory laws, Medicare is a secondary payer in situations where a Medicare
beneficiary=s hospital bill is covered by
liability insurance, and Medicare is prohibited from paying during the 120-day Apromptly@ period.[20]

With
respect to the rights of providers after the expiration of the Apromptly@ period,
the HCFA issued a 1995 memorandum providing that the provider or supplier Amay, but
is not required to bill Medicare for conditional payment if the
liability insurance claim is not finally resolved.@[21]  HCFA=s
successor entity, the Centers for Medicare & Medicaid Services (CMS), has
published this same construction in Chapter 2 of its Medicare Secondary
Payer Manual (MSPM).[22]  Section 40.2 of the MSPM is entitled ABilling
in MSP Liability Insurance Situations@ and
provides, in pertinent part:








Generally, providers . . . must bill liability
insurance prior to the expiration of the promptly period rather than bill
Medicare. . . .  Following expiration of
the promptly period . . . a provider . . . may either:

 

$       
bill Medicare for payment and withdraw all claims/liens against the
liability insurance/beneficiary=s liability insurance settlement . . . ; or 

 

$       
maintain all claims/liens against the liability insurance/beneficiary=s liability insurance
settlement.

. . . . 

 

The following applies to providers who
participate in Medicare . . . :

 

$       
if the provider bills Medicare, the provider must accept the Medicare
approved amount as payment in full and may charge beneficiaries only
deductibles and coinsurance.[sic]

 

$       
if the provider pursues liability insurance, the
provider may charge beneficiaries actual charges, up to the amount of the
proceeds of the liability insurance less applicable procurement costs but may
not collect payment from the beneficiary until after the proceeds of the
liability insurance are available to the beneficiary.[23]

Therefore,
under HCFA and CMS regulations, after the 120-day Apromptly@ period
ends, whenever services provided to a Medicare beneficiary are also covered by
a liability insurance policy, providers have the right either to bill Medicare
or to maintain a lien against a potential liability insurance settlement.













An
agency=s
construction of its own regulations is entitled to substantial deference.[24]  We, therefore, defer to the appropriate
agency=s
construction of federal Medicare law granting appellees a federal right to
maintain their lien against Speegle=s
liability insurance settlement in lieu of billing Medicare.[25]  Accordingly, we hold that the Hospital is
entitled to recover the $142,915.01 amount of the lien from Speegle.[26]  We overrule the portion of Speegle=s first
issue challenging the trial court=s
judgment in favor of appellees on their hospital lien.[27]

V.     Federal Medicare Law
Preempts Section 146.002(c) of the

Texas
Civil Practice and Remedies Code

      In his second issue, Speegle argues that
the trial court erred by denying his summary judgment motion to invalidate the
hospital lien because appellees failed to comply with Texas Civil Practice and
Remedies Code section 146.002(c)=s
requirement that health care service providers timely bill third party payers,
including Medicare, whenever they are Aauthorized@ to do
so.[28]

Civil
practice and remedies code section 146.002(c) provides:

If the health care service provider is required or authorized to
directly bill a third party payor operating under federal or state law,
including Medicare and the state Medicaid program, the health care
service provider shall bill the third party payor not later than:

(1) the date required under any contract between the health care
service provider and the third party payor or the date required by federal
regulation or state rule, as applicable; or








(2) if there is no contract between the health care service provider
and the third party payor and there is no applicable federal regulation or
state rule, the first day of the 11th month after the date the services are
provided.[29]

Under
section 146.003(a), a health care service provider who violates section 146.002>s prompt
billing requirements Amay not recover from the
patient any amount that the patient would have been entitled to receive as
payment or reimbursement under a health benefit plan or that the patient would
not otherwise have been obligated to pay had the provider complied with Section
146.002.@[30]  Thus, chapter 146 requires medical care
providers to bill Medicare for services received by Medicare-eligible patients
when providers are permittedCsuch as
after the 120-day Apromptly@ period.[31]  In such a circumstance, section 146.002(c)
conflicts with federal law requiring Medicare to be regarded as a secondary
payer and granting hospitals the option of maintaining a hospital lien, even if
they are authorized to bill Medicare instead.[32]













When
state and federal law conflict, we look to federal preemption principles
derived from the Supremacy Clause of the United States Constitution.[33]  When a state law conflicts with valid federal
law, the state law is preempted and has no effect.[34]  A federal agency acting within the scope of
its congressionally delegated authority may similarly preempt state law.[35]  A state law conflicts with federal law and is
thus preempted when the state law stands as an Aobstacle
to the accomplishment and execution of the full purposes and objectives of
Congress.@[36]  In determining whether a state statute is an
obstacle to the accomplishment and execution of the full purposes and
objectives of Congress in passing a federal statute, we look to the language of
the statute and Congress=s intent.[37]

We have
held that 42 U.S.C. ' 1395y(b)(1) and HCFA
regulations provide that Medicare is the secondary source of payment when other
funds are available to pay a Medicare-eligible patient=s
hospital charges.[38]  The requirement in section 146.002 that
health care providers must bill Medicare whenever authorized to do so presents
an obstacle to accomplishing this objective. 
Therefore, we hold that section 146.002(c) is preempted to the extent it
requires a hospital to bill Medicare as a primary source of payment when other
funds are available to pay the hospital charges.[39]  We overrule Speegle=s second
issue.

VI.     Segregation of Appellees=
Attorney=s Fees








In his third issue, Speegle argues that the trial court erred by
awarding appellees= attorney=s fees
based on the jury=s verdict because appellees were
not entitled to recover attorney=s fees
on their claim to enforce the lien[40]
and the recoverable fees were not segregated from the non-recoverable fees.[41]

As a
general rule, fee claimants have always been required to segregate attorney=s fees
between claims for which they are recoverable and claims for which they are
not.[42]  Only when a claimant establishes that the
same Adiscrete
legal services advance both a recoverable and unrecoverable claim@ are the
fees Aso
intertwined that they need not be segregated.@[43]








The
Hospital pleaded for recovery of attorney=s fees
under sections 37.009 and 38.001 of the Texas Civil Practice and Remedies Code.[44]  The Hospital=s
defense of Speegle=s declaratory judgment action
and its action to recover on the lien both depended on establishing the
validity of the hospital lien.  Because
discrete legal services advanced both the declaratory judgment action and the
action to recover on the lien, the resulting legal fees were so intertwined
that they need not be segregated.[45]  Thus, the trial court did not err by failing
to segregate attorney=s fees.  We overrule Speegle=s third
issue.

VII.     Conclusion

We affirm the trial court=s final
judgment decreeing that appellant take nothing, that the Hospital=s lien
be fixed at the sum of $142,915.01, and that the Hospital recover that amount
under the lien, in addition to interest and attorney=s fees.

 

PER
CURIAM

 

PANEL:  CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DELIVERED:  December 17, 2009











[1]According to Speegle,
settlement monies were set aside in a fund to pay the hospital lien, and Athe fund is still in
existence today.@





[2]Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).





[3]Sw. Elec. Power Co., 73 S.W.3d at 215.





[4]Havlen v. McDougall, 22 S.W.3d 343, 345
(Tex. 2000).





[5]Valence Operating Co. v.
Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).





[6]Great Am. Reserve Ins.
Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).





[7]See Wal-Mart Stores, Inc.
v. Spates,
186 S.W.3d 566, 568 (Tex. 2006); City of Keller v. Wilson, 168 S.W.3d
802, 822B24 (Tex. 2005).





[8]Clear Creek Basin Auth., 589 S.W.2d
at 678.





[9]Valence Operating Co., 164 S.W.3d at 661.





[10]Tex. Prop. Code Ann. ' 55.002(a) (Vernon
2007); see Daughters of Charity Health Servs. of Waco v. Linnstaedter,
226 S.W.3d 409, 411 (Tex. 2007).  The
parties do not dispute that appellees are a Ahospital@ within the meaning of this statute.  And, contrary to Speegle=s contention, Chapter 55
does not prohibit liens involving treatment of individuals who are Medicare
beneficiaries or covered under private medical insurance.  See Tex. Prop. Code Ann. '' 55.001B.008 (Vernon 2007).





[11]Tex. Prop. Code Ann. ' 55.002(a).





[12]Id. ' 55.003(a) (Vernon
2007).





[13]Id. ' 55.007 (Vernon
2007); Linnstaedter, 226 S.W.3d at 411.





[14]Am. Hosp. Ass=n v. Sullivan, No. 88-2027(RCL), 1990
WL 274639, at *6 (D.D.C. May 24, 1990).





[15]Omnibus Budget
Reconciliation Act of 1980, Pub. L. No. 96-499, ' 953, 94 Stat. 2599
(codified as amended at 42 U.S.C. ' 1395y(b)(2) (Supp. 2009)).





[16]Varacalli v. State Farm
Mut. Auto. Ins. Co., 763 F. Supp. 205, 208 (E.D. Mich. 1990); see also Abrams v.
Heckler, 582 F. Supp. 1155, 1164 (S.D.N.Y. 1984).





[17]H.R. Rep. No. 96-1167, ' 825, at 389 (1980),
as reprinted in 1980 U.S.C.C.A.N. 5526, 5752.





[18]42 U.S.C. ' 1395y(b)(2)(A)
(2001) (current version at 42 U.S.C. ' 1395y(b)(2)(A), (B) (Supp. 2009)).





[19]42 C.F.R. ' 411.50(b) (2001).





[20]The HCFA regulations
provide that AMedicare benefits are
secondary to benefits payable by a third party payer even if State law
or the third party payer states that its benefits are secondary to Medicare
benefits or otherwise limits its payments to Medicare beneficiaries.@  42 C.F.R. ' 411.32(a)(1) (2001) (emphasis added).





[21]Joiner v. Med. Ctr. E.,
Inc.,
709 So. 2d 1209, 1220 (Ala. 1998) (emphasis added) (quoting an August 21, 1995
HCFA memorandum, which was in turn quoted in a March 12, 1996 HCFA memorandum).





[22]U.S. Dep=t of Health & Human
Servs., Ctrs. for Medicare & Medicaid Servs., Medicare Secondary Payer
(MSP) Manual, ch. 2, ' 40.2 (2009),
http://www.cms.hhs.gov/manuals/downloads/msp105c02.pdf.





[23]Id. (emphasis added).





[24]Lyng v. Payne, 476 U.S. 926, 939, 106
S. Ct. 2333, 2341 (1986); see Legend Airlines, Inc. v. City of Fort Worth,
23 S.W.3d 83, 95 (Tex. App.CFort Worth 2000, pet. denied); see also United
States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F. Supp. 2d
1017, 1046 (S.D. Tex. 1998) (AAs the agency charged with enforcing regulations
. . . HHS= and its subdivision=s, HCFA=s, interpretation of
those regulations is entitled to deference.@).





[25]Our holding does not
address the validity of a hospital lien in situations where the patient is the
beneficiary of private medical insurance rather than Medicare.





[26]Speegle cites Linnstaedter,
226 S.W.3d at 411, for the proposition that appellees may not file a lien
against Speegle=s tort claim because a
hospital cannot sue a patient for the difference between its normal rate and an
applicable discounted rate.  Id.  However, that case involved a patient covered
under workers= compensation insurance,
and the court expressly grounded its holding on the Texas Labor Code=s prohibition of claims
against workers= compensation
patients.  Id. (citing Tex. Lab.
Code Ann. ' 413.042(a) (Vernon
2006) (providing that hospitals Amay not pursue a private claim against a workers= compensation claimant@ for all or part of the
costs of treatment)).  Speegle also cites
federal case law prohibiting a hospital lien when the provider had already
received payment from a third party payer yet still sought to enforce its lien
to collect the difference between its normal charges and the discounted
reimbursement rate; those cases likewise do not apply here because the Hospital
has not been paid by Medicare.  See
Rybicki v. Hartley, 792 F.2d 260, 261 (1st Cir. 1986) (lien holder had been
paid by Medicare); Satsky v. United States, 993 F. Supp. 1027, 1028B29 (S.D. Tex. 1998) (lien
holder paid by private prepaid insurance plan); Holle v. Moline Pub. Hosp.,
598 F. Supp. 1017, 1019 (C.D. Ill. 1984) (lien holder paid by Medicare).





[27]Based on our holding
regarding appellees= recovery under the
hospital lien, we need not reach, and express no opinion regarding, the portion
of appellant=s first issue challenging
the trial court=s judgment granting
appellees= breach of contract
claim.  See Tex. R. App. P. 47.1.





[28]See Tex. Civ. Prac. &
Rem. Code Ann. ' 146.002 (Vernon
2005).





[29]Id. ' 146.002(c)
(emphasis added).





[30]Id. ' 146.003(a) (Vernon
2005) (emphasis added).





[31]Id. ' 146.002(c); see 42
U.S.C. ' 1395y(b)(1) (2001).





[32]See 42 C.F.R. ' 411.32 (2001); Joiner,
709 So. 2d at 1220B21 (applying Medicare
secondary payer statutes and HCFA policies); Parkview Hosp., Inc. v. Roese,
750 N.E.2d 384, 390B91 (Ind. Ct. App. 2001)
(same).  Appellees elected to maintain
the hospital lien rather than bill Medicare.





[33]U.S. Const., art. VI, cl.
2 (AThis Constitution, and
the Laws of the United States which shall be made in Pursuance thereof . . .
shall be the supreme Law of the Land; and the Judges in every State shall be
bound thereby, any Thing in the Constitution or Laws of any State to the
Contrary notwithstanding.@).





[34]City of New York v. Fed.
Commc=ns Comm=n, 486 U.S. 57, 63B64, 108 S. Ct. 1637, 1642
(1988); see also BIC Pen Corp. v. Carter, 251 S.W.3d 500, 504
(Tex. 2008).





[35]City of New York, 486 U.S. at 63B64, 108 S. Ct. at 1642; La.
Pub. Serv. Comm=n v. Fed. Commc=ns Comm=n, 476 U.S. 355, 368B69, 106 S. Ct. 1890, 1898B99 (1986).





[36]Wyeth v. Levine, ‑‑‑-
U.S. ‑‑‑‑, 129 S. Ct. 1187, 1193B94 (2009) (quoting Hines
v. Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941)); see also
BIC Pen Corp., 251 S.W.3d at 504.





[37]See Wyeth, ‑‑‑-
U.S. ‑‑‑‑, 129 S. Ct. at 1194B95 (holding that Athe purpose of Congress
is the ultimate touchstone in every pre-emption case@ and determining intent
through statutory language and legislative history).





[38]See 42 U.S.C. ' 1395y(b)(1) (2001); 42
C.F.R. ' 411.32 (2001).





[39]See, e.g., BIC Pen Corp.,
251 S.W.3d at 504 (holding that Astate law is impliedly preempted if it >actually conflicts with
federal law or regulations,= because . . . state law obstructs accomplishing
and executing Congress= full purposes and
objectives@).





[40]Hermann Hosp. v. Vardeman, 775 S.W.2d 866, 868
(Tex. App.CHouston [1st Dist.] 1989,
no writ) (holding that Athe hospital lien statute
. . . clearly does not provide for the recovery of attorney=s fees for enforcement of
the lien@).





[41]Speegle does not
challenge the reasonableness or necessity of the attorney=s fees apart from his
claim that they should not be awarded because they are not segregated.





[42]Tony Gullo Motors I, L.P.
v. Chapa,
212 S.W.3d 299, 313 (Tex. 2006).





[43]Id. at 313B14; see Hong Kong
Dev., Inc. v. Nguyen, 229 S.W.3d 415, 455 (Tex. App.CHouston [1st Dist.] 2007,
no pet.) (op. on reh=g).  Speegle=s contention that Chapa demands
segregation of recoverable and non-recoverable fees in all cases is
incorrect.  See Chapa, 212 S.W.3d
at 313_14.





[44]See Tex. Civ. Prac. &
Rem. Code Ann. ' 37.009 (Vernon 2008)
(authorizing award of attorney=s fees to any party to declaratory judgment
action); Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (Vernon
2008) (authorizing award of attorney=s fees on breach of contract and other claims).





[45]See Chapa, 212 S.W.3d at 313_14.